# EXHIBIT A

# Process, Pleadings, and Orders Served in State Court Action

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 23 2020

Sherri R. Carter, Executive Officer/Clerk of Court

By: Kristina Vargas, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DONELL COREY KENDALL, individually, and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* STANLEY MOSK COURTHOUSE 111 N. Hill St., Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):* 20STCV36528 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ALEXIS DJIVRE, LAW OFFICE OF ALEXIS DJIVRE, 330 N. Brand Ave., Ste. 201, Glendale, CA 91203

| DATE: SEP 23 2020 *(Fecha)* | SHERRI R. CARTER Clerk, by *(Secretario)* Kristina Vargas | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Nestle Waters North America, Inc., dba Ready Refresh By Nestle

   under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☒ other *(specify)*: Enity form unkown
4. ☐ by personal delivery on *(date)*:

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Azar Mouzari, SBN 263461
BEVERLY HILLS TRIAL ATTORNEYS, P.C.
468 N. Camden Drive, Suite 238
Beverly Hills, CA 90210
azar@bhtrialattorneys.com
(310) 858-5567

Alexis Djivre, SBN 245138
LAW OFFICE OF ALEXIS DJIVRE
1155 N. Central Avenue, Suite 201
Glendale, CA 91202
alexisdjivre@gmail.com
(213) 700-3436

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 23 2020

Sherri R. Carter, Executive Officer/Clerk of Court
By: Kristina Vargas, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| DONELL COREY KENDALL, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO **20STCV36528**<br><br>**COMPLAINT FOR DAMAGES [CLASS ACTION]**<br><br>**(1) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION AND DECEPTIVE BUSINESS PRACTICES LAW (BUSINESS & PROFESSIONS CODE SECTIONS 17200, ET SEQ.)**<br><br>**(2) VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (CIVIL CODE SECTIONS 1750, ET SEQ.)**<br><br>**(3) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**(4) MONEY HAD AND RECEIVED**<br><br>**(5) UNJUST ENRICHMENT**<br><br>**(6) IMPOSITION OF UNLAWFUL PENALTIES IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1671**<br><br>**(7) NEGLIGENCE**<br><br>**[DEMAND FOR JURY TRIAL]**<br><br>**UNLIMITED JURISDICTION** |

- 1 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

1

2          COMES NOW Plaintiff DONELL COREY KENDALL ("Kendall"), individually,

3   and on behalf of all others similarly situated (collectively "Plaintiffs"), and through their

4   counsel of record, Beverly Hills Trial Attorneys, P.C. and the Law Office of Alexis Djivre,

5   file this class action complaint against NESTLE WATERS NORTH AMERICA, INC.,

6   doing business as READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive

7   ("Defendants), seeking damages and relief on behalf of themselves and for all others

8   similarly situated for violation of California's Unfair Competition Law California - *Business*

9   *& Professions Code* sections 17200, *et seq.* ("UCL"), California's Consumer Legal

10  Remedies Act - California *Civil Code* sections 1750, *et seq.*, ("CLRA"), and related claims

11  as stated herein as below.  Unless explicitly stated to the contrary, all allegations are based

12  upon information and belief.

13                                    **INTRODUCTION**

14         Defendants NESTLE WATERS NORTH AMERICA, INC., doing business as

15  READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive, are a retail beverage

16  delivery service that provides bottled water and other beverages to customers' homes and

17  offices on a monthly subscription basis.  Plaintiff DONELL COREY KENDALL, and others

18  similarly situated ("Plaintiffs"), purchased water and other beverages from the Defendants

19  pursuant to contract.    Many of the Plaintiffs, such as Plaintiff DONELL COREY

20  KENDALL, never received a formal written contract.  However, on Defendants' website,

21  there was an offer page (See Exhibit "1"), which listed terms and conditions of beverage

22  service by recurring delivery.[1]  In those terms, there was a provision for a fee if the

23

24         ─────────────────────────

25         [1] Because this webpage advertised a special offer in 2014, that webpage no longer exists,
   however, the $20 late fee still exists, and is listed on the Terms and Conditions section (See Exhibit
26  "2") of the ReadyRefresh Water & Beverage Delivery website at:
   https://www.readyrefresh.com/en/terms?gclid=Cj0KCQjw9b_4BRCMARIsADMUIyoVa6ZmNj9-
27  5gNJc8fbyNL.qeJKedJNH4GfCGqjX0hhUJQNyhB_pw1M1aAvGIEALw_wcB&gclsrc=aw.ds
   Notably, the new terms no longer state that the alternate fee could be interest of 1.5% per month.

28

customers' monthly payments were late. The contract provided that the customer would pay Defendants "...the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount...." Because the monthly interest was usually so minimal, Defendants always charged the $20 fee. That flat fee was often in excess of seventy percent (70%) per month of the actual cost of the beverage service. Plaintiffs assert that California law prevents service charges, late fees and finance charges in excess of eighteen percent (18%) per annum or 1.5% per month, and that the "maximum rate allowed by applicable law is, in fact, 18% per annum. Defendants consistently charged Plaintiffs late fees substantially in excess of that amount.

Plaintiff DONELL COREY KENDALL brings this action on behalf of himself and other similarly situated consumers who have entered into contracts with Defendants for the delivery of bottled water and other beverages, and were charged late fees that were in excess of 1.5% per month, in order to obtain redress for those who have paid those unlawful fees. Plaintiff seeks to obtain damages, restitution, and other appropriate relief in the amount by which Defendants were unjustly enriched as a result of its deceptive and unlawful practices. Finally, Plaintiffs seek reasonable attorneys' fees pursuant to California *Code of Civil Procedure* section 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest, and satisfies that statutory requirements for an award of attorneys' fees.

## PARTIES

**PLAINTIFFS**

1.      Plaintiff DONELL COREY KENDALL is, and at all times relevant herein, was a resident of the City and County of Los Angeles, State of California. Plaintiff DONELL COREY KENDALL purchased water from the Defendants, and each of them, from on or about August 2014 to approximately late 2018. During that period, Defendants charged DONELL COREY KENDALL late fees in the amount of $20 for each month he was late in paying for his beverage delivery service. When Plaintiff entered into an

- 3 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

1   agreement to purchase water delivery services from the Defendants, he was unaware that
2   any late fee he would be charged was akin to usury, in that it exceeded the maximum
3   allowable by California law. At all times material hereto, Plaintiff DONELL COREY
4   KENDALL was injured as a result of Defendants' unfair competition and deceptive billing
5   practices as described herein.

6       2.      Unnamed Class Plaintiffs, are, and at all times relevant herein, were residents
7   of the State of California. Each of these Plaintiffs were charged late fees by the
8   Defendants in the amount of $20 for each month they were late in paying for their
9   beverage delivery service.

10   **DEFENDANTS**

11       3.      Defendant NESTLE WATERS NORTH AMERICA, INC., doing business
12   as READY REFRESH, BY NESTLE, is, and has been, a Delaware Corporation with its
13   principal office or place of business in Stanford, Connecticut. At all times relevant herein,
14   Defendants have marketed and have caused to be marketed their services, and have
15   conducted business within the jurisdiction of this Court.

16       4.      At all times material hereto, Defendants, and each of them, engaged in their
17   unfair and deceptive billing practices within the jurisdiction of this Court.

18       5.      Plaintiffs are uncertain of the true names and capacities of the Defendants
19   sued herein as DOES 1 through 20, inclusive, and therefore, sue said Defendants under
20   said fictitious names. Plaintiffs will amend this complaint further to insert the true names
21   and capacities of said Defendants when the same are discovered. Plaintiffs are informed
22   and believe and thereon allege that each of the fictitiously named Defendants are
23   responsible in some manner for the occurrences herein alleged and are liable to the named
24   Plaintiffs, and all other similarly situated on the claims hereinafter set forth. Said named
25   Defendants and fictitiously named Defendants are hereinafter collectively referred to as
26   "Defendants."

27       6.      At all times mentioned, all Defendants and each of them, were agents and/or
28

- 4 -
**COMPLAINT FOR DAMAGES**
**[CLASS ACTION]**

1  employees of all other Defendants, and in doing the things hereinafter mentioned were
2  acting within the course and scope of their authority as such agents and with the consent
3  and ratification of all other Defendants.

4  ## JURISDICTION AND VENUE

5  7.    This Court has personal jurisdiction over the Defendants by virtue of
6  Defendants transacting, doing and soliciting business in this county, because a substantial
7  part of the relevant events occurred in this county, because the property that is the subject
8  of the is action is situated here, and because the Defendants' conduct harms the consumers
9  of the City and County of Los Angeles, California.

10  8.    Venue is proper in this Court as the activities of Defendants complained of
11  herein took place in Los Angeles County, as well as elsewhere in the State of California.

12  ## GENERAL ALLEGATIONS

13  9.    Defendants are providers of bottled water and other beverages to consumers.

14  10.   Plaintiffs, on behalf of themselves and the Class they seek to represent,
15  allege on information and belief, that Defendants and each of them at all times relevant
16  herein, charged their customers exorbitant late fees without notice to their customers and in
17  violation of California's Unfair Competition Laws, Consumer Legal Remedies Act and
18  common law.

19  11.   At the time a payment was deemed "late" by Defendants, Plaintiffs and other
20  customers were charged exorbitant and disproportionately high late fees for which they
21  had not been provided adequate notice.

22  12.   Defendants knew that their late fees were unlawful under California law.

23  13.   Defendants fraudulently concealed from and intentionally failed to disclose
24  to Plaintiff and other members of the Class the fact that the late fee was in excess of the
25  maximum amount allowable under California law.

26  14.   Plaintiffs relied on the fact that any late fees they would be required to pay
27  would not be in excess of the maximum amount allowable under California law. Plaintiffs

28

- 5 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

1  would not have entered into such contracts but for the deceptive marketing by Defendants.

2  Furthermore, these contracts were contracts of adhesion, in that Plaintiffs would not be

3  able to purchase water delivery from the Defendants unless they agreed to the terms and

4  conditions of the contracts, including the late fee charges.

5      15.    Defendants intentionally failed to disclose material facts regarding the truth

6  about the late fees in order to entice Plaintiffs into entering their contracts for water

7  delivery.

8      16.    Plaintiffs have suffered harm as a result of paying such excessive late fees.

9  **CLASS ACTION ALLEGATIONS**

10      17.    As further stated herein as to the following claims, Plaintiffs bring their

11  causes of action on behalf of themselves and all others similarly situated, and certification

12  of this class action is appropriate under California *Code of Civil Procedure* section 382 and

13  California *Civil Code* section 1781, because the questions of law or fact common to the

14  respective Class members predominate over questions of law or fact affecting only

15  individual members.

16      18.    The "Class" is defined as all those subscribers of Defendants' water delivery

17  services who were charged late fees by the Defendants during the past four years. No

18  claim is made for any corporate entity under the causes of action for violation of the CLRA

19  and the UCL. A subclass of non-corporate users' claims is asserted for

20  consumers/individuals.

21  **A.**    **Commonality**

22      19.    There are questions of law and fact that are common to the claims of

23  Plaintiffs. Among these common questions are the following:

24          (a)    Whether Defendants violated California's Unfair Competition Law in

25  charging excessive late fees without providing adequate notice of the same;

26          (b)    Whether Defendants violated California's Consumer Legal Remedies

27  Act by charging excessive late fees without providing adequate notice of the same;

28

- 6 -<br>COMPLAINT FOR DAMAGES<br>[CLASS ACTION]

1          (c)     Whether Defendants' conduct was unfair under the UCL in charging

2 its customers excessive late fees without providing adequate notice of the same;

3          (d)     Whether Defendants' conduct was misleading under the UCL;

4          (e)     Whether Defendants' practices and representations made in

5 connection with the customer agreement terms pertaining to the late fees were false and/or

6 misleading;

7          (f)     Whether Defendants' conduct in connection with the practices and

8 representations made in the customer agreement terms pertaining to the late fees unjustly

9 enriched Defendants at the expense of and to the detriment of Plaintiffs;

10          (g)     Whether Defendants' conduct as set forth above injured consumers,

11 and if so, the extent of the injury;

12          (h)     Whether Defendants' conduct constitutes imposition of an illicit

13 penalty in charging excessive late fees in violation of Civil Code section 1671; and

14          (i)     Whether Defendants were negligent in charging their customers

15 excessive late fees without providing adequate notice of the same.

16 **B.**    **Numerosity**

17      20.    The members of the Class are so numerous that separate joinder of each

18 member is impracticable.  Plaintiffs are informed and believe that in the County of Los

19 Angeles alone, the members of the Class would easily exceed the minimum numbers to

20 satisfy this requirement.

21 **C.**    **Typicality**

22      21.    Plaintiffs' claims are typical of the claims of the Class in that they are

23 claiming Defendants charged them excessive late fees without notice to them.

24      22.    The core issues which predominate over all the other issues in the litigation

25 involve Defendants' unfair competition, violation of the CLRA and other violations, as

26 discussed above, specifically with respect to the excessive charging of late fees without

27 notice to the customers.

28

---

- 7 -

COMPLAINT FOR DAMAGES
[CLASS ACTION]

23. Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D. Adequacy of Representation**

24. Plaintiffs will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action. They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class. There is no hostility between Plaintiffs and the unnamed Class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

25. To prosecute this case, Plaintiffs have chosen the law firms of Beverly Hills Trial Attorneys, P.C. and the Law Office of Alexis Djivre, who have represented Plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E. Superiority**

26. The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class. All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendants and other acts constituting negligence, unfair competition under the UCL, violation of Consumer Legal Remedies Act and imposition of unfair and illicit penalties.

27. Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

28. As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

29. Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendants and other unfair competition under the UCL, the predominance requirement needed for class action treatment is satisfied.

- 8 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

30.   A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

(a)   Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

(b)   It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendants' actions to bring separate actions;

(c)   The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(d)   Individual suits would not be cost effective.  The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and

(e)   The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

31.   Defendants have also acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (For Injunctive Relief and Restitution Against All Defendants
### Under *Business and Professions Code* sections 17200, *et seq.*)

32.   Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

33.   Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this first cause of action on behalf of themselves and as a private attorneys general.

34.   *Business and Professions Code* section 17200, *et seq.*, also known as the

-9-
COMPLAINT FOR DAMAGES
[CLASS ACTION]

Unfair Competition Law ("UCL") defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. The UCL imposes strict liability. Plaintiffs need not prove that Defendants intentionally or negligently engaged in unlawful, unfair or fraudulent business practices – but only that such practices occurred.

***"Unfair" Prong***

35.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

36.     Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants engaged in a misleading and deceptive penalty for paying one's water delivery bills more than 30 days late. That fee was described as "a late fee not to exceed $20 per month." However, the terms also state that "[i]f the late fee exceeds the maximum rate allowed by applicable law, the late charge will be equal to such maximum rate." The maximum rate allowed by California is approximately 18% per annum, or 1.5% per month. In most cases, a monthly fee of $20 was in excess of 70% of the beverage charge. Furthermore, the terms imply that the fee may be based on "any" charge – including, but not limited to, the beverages themselves, the bottle fees, the delivery fees and taxes. It is unclear how the determination is made. These acts and practices offend an established public policy of transparency in pricing, and are immoral, unethical, oppressive and unscrupulous, which are substantially injurious to consumers.

37.     The harm to Plaintiff DONELL COREY KENDALL and Class members outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

- 10 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

*"Fraudulent" Prong*

38.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

39.   Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiff, and are highly likely to deceive and have deceived members of the consuming public. Plaintiff DONELL COREY KENDALL relied on Defendants' fraudulent and deceptive representations regarding their late fees. These misrepresentations played a substantial role in Plaintiff's decision to enter into an agreement with Defendants for beverage delivery, and Plaintiff would not have purchased their products without these misrepresentations.

*"Unlawful" Prong*

40.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

41.   As detailed in Plaintiff's Second Cause of Action below, the Consumer Legal Remedies Act, California *Civil Code* sections 1750 - 1784 ("CLRA"), prohibits a business from engaging in sales practices that are deceptive or misrepresentations when offering goods and services to the general public.

42.   Defendants' retention of funds from Plaintiff and others as a result of their wrongful activities amounts to conversion under *Civil Code* section 3336.

43.   Plaintiffs allege that the practice of Defendants is an unfair business practice under section 17200 of the *Business and Professions Code*, entitling them and others to restitution, and further that such practice should be enjoined.

44.   Such illegal conduct also constitutes an unfair business practice under section 17200.

45.   Plaintiffs allege, on information and belief, that Defendants' unfair practices should be temporarily and permanently enjoined.

46.   Plaintiffs further allege that the actions conducted by the Defendants are, and

- 11 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

continue to be, a deliberate and intentional attempt by Defendants to "fleece the consumer" in violation of law, and is of such a fraudulent and malicious nature as described in section 3294 of the California *Civil Code* so as to entitle the Plaintiffs to punitive damages.

47. Besides being unlawful, Defendants' conduct alleged herein is "unfair" within the meaning of section 17200 inasmuch as such conduct offends public policy in this State, has no utility or rational justification and is substantially injurious to the general public.

48. Besides being unlawful and unfair, Defendants' conduct alleged herein is also "fraudulent" and/or "misleading" within the meaning of *Business & Professions Code* sections 17200 inasmuch as such conduct is likely to deceive members of the general public.

49. On information and belief, Defendants have received unearned commercial benefits, at the expense of their competitors and the general public, as a result of their employment of unlawful, and/or unfair and/or fraudulent and/or misleading business practices, including charging excessive late fees without advance notice to their customers.

50. Defendants' unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendants' competitors. The amounts charged by Defendants for late fees are unlawful in that the amount is an improper attempt to state liquidated damages such that the amount operates as a penalty in violation of California law.

51. Plaintiffs allege it is clear, as a matter of law, that the Defendants have created an elaborate scheme to cheat consumers in violation of *Civil Code* section 1749.5 by their actions. Rather than refunding the ill-gotten money to their consumers, Defendants have kept the money they gained due to their unfair actions.

52. Plaintiffs further allege that unless the court issues a Temporary Restraining Order and an Order to Show Cause re Preliminary Injunction enjoining the Defendants

- 12 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

from violating section 1749.5 of the California *Civil Code*, irreparable harm and injury will result to the Plaintiffs (and to the unsuspecting public) before the matter can be heard.

53.    In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

## SECOND CAUSE OF ACTION

### (For Injunctive Relief Against All Defendants Under California *Civil Code* section 1750, *et seq.*)

54.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

55.    Defendants are "persons" as defined by *Civil Code* section 1761(c).

56.    Plaintiff and each member of the Class are "consumers" within the meaning of *Civil Code* section 1761(d).

57.    The Consumers Legal Remedies Act applies to Defendants' conduct because it extends to transactions that are intended to, or result in the sale or lease of goods or services to consumers. The delivery of bottled water and other beverages at issue herein constitutes "services" under the CLRA.

58.    Defendants violated and continue to violate the CLRA by engaging in the following practices prescribed by *Civil Code* section 1770(a) in transactions with Plaintiffs and the members of the Class which were intended to result in, and did result in, payment of excess amounts for late fees for late subscription payments.

59.    In violation of *Civil Code* section 1770(a)(2), Defendants made misrepresentations as well as omitted to provide important information to the public that were deceptive.

60.    In violation of *Civil Code* section 1770(a)(14), Defendants represented that

- 13 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

1    their billing transactions with their customers involved rights, remedies or obligations

2    which the transactions did not have or involve, or which were prohibited by law, as

3    described above.

4        61.    In violation of *Civil Code* section 1770(a)(16), Defendants represented that

5    the subject of the transactions with their customers had been supplied in accordance with

6    their representations, when they were not, as above described.

7        62.    Defendants have failed to disclose material facts to the Plaintiffs by

8    continuing to charge them excessive late fees, and by failing to disclose their illegal

9    conduct in not crediting the late fees they illegally collected from their customers.

10   Defendants had a duty to disclose the omitted facts because: 1) they had exclusive

11   knowledge of material facts not known to Class members and which could not be

12   discerned from review of Defendants' contracts and agreements; 2) because they actively

13   concealed material facts; and 3) because they made partial representations, including those

14   discussed above, while suppressing true material facts. The facts that Defendants

15   misrepresented and concealed as alleged in the preceding paragraphs were material to the

16   decisions Plaintiffs made in entering contracts with the Defendants, and their failure to

17   complain about the excessive late fees they were charged by Defendants. Defendants are

18   liable under the CLRA for these material omissions.

19       63.    Pursuant to Civil Code section 1782(d), Plaintiffs seek a court order

20   enjoining the above-described wrongful acts and practices of Defendants.

21       64.    Pursuant to Civil Code section 1782, Plaintiffs have notified Defendants in

22   writing by certified mail of the particular violations of Civil Code section 1770 and the

23   other violations as alleged herein and demanded that Defendants rectify the problems

24   associated with the actions detailed above and give notice to all affected consumers of its

25   intent to so act.

26   / / /

27   / / /

28

- 14 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

## THIRD CAUSE OF ACTION

### (For Breach of The Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

65.    Plaintiffs hereby incorporate all paragraphs above as though fully set forth herein.

66.    In all contracts, including the written contracts between the Plaintiffs and Defendants, there is an implied covenant of good faith and fair dealing requiring the parties to deal fairly with each other in all respects in connection with the contracts and not to take any action which deprives the other of the benefits of the contracts to any extent.

67.    In each of the contracts between Plaintiffs and Defendants, the covenants of good faith and fair dealing include obligations on the part of Defendants to charge and collect only fair and equitable late fees, and not more.  Defendants breached the covenants of good faith and fair dealing in each of the contracts by charging excessive late fees without notice to their consumers.

68.    As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in amounts to be proven at trial, and continue to be damaged.

## FOURTH CAUSE OF ACTION

### (For Money Had and Received Against All Defendants)

69.    Plaintiffs incorporate all paragraphs above as though fully set forth herein.

70.    Plaintiffs paid to Defendants, and Defendants retained, monies which it would be inequitable for Defendants to continue to retain.

71.    The payment by Plaintiffs of excess monies described above was done as a result of:

(a)     Mistake of fact and/or ignorance of law; and/or

(b)     Reliance on negligent misrepresentations that specific excessive and unlawful amounts were due when no such amounts were due.

- 15 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

72. The payments of these excess monies created an indebtedness on the part of Defendants to Plaintiffs and the other Class members.

73. As a result of Defendants' unjust retention and collection of the excess monies discussed above, Defendants are indebted to Plaintiffs and each member of the Plaintiff Class in a sum certain, the amount of which can be proven at trial by reference to Defendants' own records. It would be inequitable for Defendants to retain said sums, and Plaintiffs and the members of the Plaintiff Class are entitled to recover said sums as money had and received by Defendants from Plaintiffs and the members of the Plaintiff Class as damages.

## FIFTH CAUSE OF ACTION

### (For Unjust Enrichment Against All Defendants)

74. Plaintiffs incorporate all paragraphs above as though fully set forth herein.

75. Defendants have been unjustly enriched by failing to appropriately credit Plaintiffs and members of the Plaintiff Class for the excessive and unwarranted late fees it charged them without notice.

76. The unlawful retention of monies pursuant to Defendants' misconduct warrants the imposition of a constructive trust to be maintained for the benefit of Plaintiffs and the members of the Plaintiff Class.

## SIXTH CAUSE OF ACTION

### (For Imposition of Unlawful Penalties in Violation of California *Civil Code* section 1671 Against All Defendants)

77. Plaintiffs incorporate all paragraphs above as though fully set forth herein.

78. Defendants' late fee policy and practices, as set forth herein, violate *Civil Code* section 1671 in that they are unreasonable under the circumstances existing at the time the contracts were made. In particular, the following policies and actions violate *Civil Code* section 1671:

    (a) Defendants' contract constitutes a contract of adhesion that does not

- 16 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

1  afford customers any control over its terms, including the terms setting forth Defendants'
2  late fee policy;

3        (b)   The contract's provisions pertaining to the imposition of late fees for
4  untimely payment is unreasonably vague and ambiguous in that it does not provide
5  customers with an indication of the amount they will be charged in the event they make
6  untimely payments; and

7        (c)   Defendants' late fee policy and practice cause customers to incur
8  excessive penalties that bear no relation to the damages Defendants actually incur as a
9  result of the untimely payments.

10     79.   As a direct result of Defendants' late fee policy and practice, Plaintiffs were
11  forced to incur excessive and unreasonable penalties.  Plaintiffs suffered injury in fact in
12  the form of lost money and/or property as a result of paying the excessive and
13  unreasonable late fees billed and automatically charged by Defendants.

14  ### SEVENTH CAUSE OF ACTION
15  ### (For Negligence Against All Defendants)

16     80.   Plaintiffs reallege and incorporate here by reference each of the foregoing
17  paragraphs, and further allege as follows.

18     81.   Defendants, and each of them, owed a duty to Plaintiffs and those they seek
19  to represent, to act with reasonable care.

20     82.   Defendants breached their duty of care by negligently harming Plaintiffs in
21  charging them excessive late fees without advance notice to the customer.

22     83.   As a result of Defendants' breach, Plaintiffs and those they seek to represent,
23  suffered harm and injuries in an amount according to proof at trial.

24  ### PRAYER FOR RELIEF

25     1.   Plaintiff, DONELL COREY KENDALL, individually and on behalf of all
26  others similarly situated, prays for relief and judgment against Defendants as follows:

27        (a)   An order certifying the Class and designating DONELL COREY
28

- 17 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]

1     KENDALL as Class Representative and his counsel as Class Counsel;

2         (b)    Awarding Plaintiff and the proposed Class members damages

3 according to proof;

4         (c)    Awarding restitution and disgorgement of all profits and unjust

5 enrichment that Defendants obtained from Plaintiff and the Class members as a result

6 of their unlawful, unfair and fraudulent business practices described herein;

7         (d)    Awarding declaratory and injunctive relief as permitting by law or

8 equity to individual non-corporate Plaintiffs, including enjoining Defendants from

9 continuing the unlawful practices set forth herein, and directing Defendants to

10 identify, with Court supervision, victims of their misconduct and pay them all money

11 they are required to pay;

12         (e)    Awarding attorneys' fees and costs; and

13         (f)    Providing such further relief as may be just and proper.

14

15 Dated: September 21, 2020        BEVERLY HILLS TRIAL LAWYERS, P.C.

16

17                           */s/ Azar Mouzari*

18                           Azar Mouzari
                             Attorneys for Plaintiff

19

20 Dated: September 21, 2020        LAW OFFICE OF ALEXIS DJIVRE

21

22                           */s/ Alexis Djivre*

23                           Alexis Djivre
                             Attorneys for Plaintiff

24

25

26

27

28

- 18 -
COMPLAINT FOR DAMAGES
[CLASS ACTION]



**ReadyRefresh**

All Products | Brands | 5-gallon quick shop    What are you looking for?

Order by phone: 1-866-512-7315    Already a customer? Sign-in

## Save up to $50 plus get free delivery on your first order, when you select recurring delivery*

1. **DELIVERY:** Customer will purchase from Company, Company's bottled water, ready to drink iced teas, and other beverage products and related products ("Products") as ordered by Customer from time to time. Company reserves the right to subject all orders to a minimum delivery requirement of either $20.00 or any two Products as determined by Company from time to time per delivery, exclusive of any taxes, fees or surcharges. All orders are subject to credit approval. Where a customer receives Included Equipment (defined below) and skips more than two monthly deliveries in the twelve month period(s) beginning with the month in which service begins, Company reserves the right to charge that customer a "Skip Fee" of $4.99 per month for each skipped month after the second skipped month. Service may not be available in all areas.

2. **LEASED EQUIPMENT:** If Customer requests, Company will lease to Customer, and Customer will pay Company lease payments for, the coolers, filtration systems and/or equipment as agreed between Company and Customer ("Leased Equipment"). Customer acknowledges that this is a true lease. If Customer purchases equipment from Company, Customer will be responsible for all repair or replacement costs unless otherwise specified in Company's warranty, if any. AccuPure plans include standard installation of up to one hour's labor and 25 feet of standard installation equipment; Customer is responsible for all additional labor and materials costs. Installation will begin at the point Customer designates, Company's responsibility and equipment apply only from that point to the AccuPure delivery point, which will be designated by Customer. Customer will provide any permission necessary for alteration of the premises such as cutting or drilling.

3. **EQUIPMENT FOR CERTAIN PLANS:** If Customer has selected a plan that includes use of equipment, Company will provide the equipment designated by Company ("Included Equipment") for Customer's use for the agreed upon time and at the agreed upon price. If Customer has selected (i) upgraded Included Equipment, Customer will pay Company the monthly upgrade fee specified; or (ii) a plan with no Included Equipment, Company will not provide any equipment to Customer.

4. **USE OF LEASED EQUIPMENT, INCLUDED EQUIPMENT AND COMPANY'S BOTTLES:** Company will install the Leased Equipment or Included Equipment, as applicable (collectively, "Equipment"), at Customer's address provided by Customer to Company. If Customer's negligence, abuse or misuse causes damage requiring repair or replacement, Customer will pay Company all such costs on demand. The Equipment and multi-gallon bottles ("Bottles") are, and at all times be, Company's sole and exclusive property, and Customer will have no right, title or interest except as provided in this Agreement. Customer can purchase the Equipment only if Customer and Company agree in writing. Customer will use the Equipment and all Bottles only for Company's Products and will not reuse or refill Bottles for any purpose whatsoever. Customer will at all times operate and maintain the Equipment and Bottles in a safe, sanitary and proper manner in accordance with Company's instructions and clean and maintain the Equipment periodically and at least once every six months, as outlined in the Company-approved guidelines. Customer (i) will not remove the Equipment from Customer's location without Company's prior written consent, (ii) will not alter the Equipment in any manner, (iii) will permit only Company to repair the Equipment, (iv) will notify Company immediately if the Equipment or any Bottles are stolen, lost, damaged or destroyed, and (v) will keep the Equipment and bottles free and clear of, and promptly notify the Company of, any levies, liens and encumbrances. Company may enter Customer's premises at reasonable times to inspect and repair the Equipment and to deliver or pick up Bottles.

5. **TERM:** The Initial Term of this Agreement will start on the date that the Equipment, if any, is installed by Company or, for Customers who purchase Products only, on the first date that such Products are delivered to Customer, and will continue for the period set forth on the order form. If no date is set forth on the order form then the Initial Term shall be for one month from the date of first delivery. Upon expiration of the Initial Term, this Agreement will continue in effect on a month to month basis until terminated by either Company or Customer on 30 days' written notice. Notwithstanding the foregoing, the Initial Term for AccuPure Customers is one year from the date of installation. A Customer who terminates this Agreement before the end of its Initial Term will be subject to a one time early termination charge to compensate Company for, as applicable, the value of equipment and/or free Products or services provided to Customer and administrative, installation, labor and other costs of Customer's account, as follows: (a) Delivery Customers: up to $25; and (b) AccuPure Customers: up to $150; ALL CUSTOMERS: Upon expiration or termination of this Agreement, Customer will permit Company to retrieve the Equipment and/or Bottles, which will be in the same condition as received by Customer, reasonable wear and tear excepted. If Customer fails to return any Equipment or Bottles, Customer will pay Company the full replacement value.

6. **PRICES:** (a) DELIVERY CUSTOMERS: Leased Equipment rental fees and bottled water and ready to drink tea prices will not be increased during the first six months or during the Initial Term of this Agreement, whichever is shorter. Any price increase during the balance of the Initial Term will not exceed Company's then current regular non-introductory prices. (b) ACCUPURE CUSTOMERS: Leased AccuPure Equipment rental fees will not be increased during the first six months of the Initial Term of this Agreement. Any rental fee increase during the balance of the Initial Term will not exceed $5.00 per month. (c) ALL CUSTOMERS: Prices for Products and rental fees are subject to change at any time on thirty (30) days' notice, subject to the periods provided in this Section 6, if any. Prices of commodities such as coffee, cocoa, sugar, paper and related products will be reviewed on a regular basis and are subject to increase at any time.

7. **CHARGES; SURCHARGES, FEES, DEPOSITS AND REFUNDS:** Customer will pay all charges for Products, Equipment, purchased equipment, and all applicable surcharges, taxes and fees, including, without limitation: (a) all bottle deposits up to $10 per Bottle and/or account deposits up to $100; (b) any applicable delivery fees up to $10.00 per delivery; (c) the Skip Fee, if applicable; and (d) all applicable State bottle deposits and redemption value on any free and purchased Products upon Customer's receipt of Company's invoice. Company may change its administrative, surcharges or other charges or deposit fees at any time with prior notice to Customer. If Customer does not pay any charge within thirty (30) days of the invoice date, Customer will pay Company the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the invoice date until paid. If the late fee or interest rate exceeds the maximum rate allowed by law, the late charge will be equal to such maximum rate. Customer will make all payments due without set-off, counterclaim or defense. Payment of invoice by Customer is an acknowledgment of acceptance and delivery. At Company's sole discretion, applicable refunds, if any, may be credited back to the credit card used for payment.

8. **RISK OF LOSS:** Customer assumes risk of loss or damage to the Equipment and Bottles in Customer's possession and is responsible for all liability resulting from their use and operation. Customer will pay Company to repair, clean or replace any lost, stolen, damaged or destroyed Equipment and/or Bottles, as determined by Company. Customer will, to the full extent permitted by law, indemnify, defend and hold harmless Company, its parent; affiliates, officers, directors, employees and agents from any loss, damage, liability, cost, fine or expense, including without limitation, reasonable attorneys' fees, incurred in connection with this Agreement. This provision will survive termination or expiration of this Agreement.

9. **DEFAULT BY CUSTOMER; COMPANY'S REMEDIES:** Customer will be in default if Customer: (a) fails to pay any amount when due; (b) fails to perform or violates any other term or condition and fails to cure the same within ten (10) days after the occurrence; or (c) abandons or misuses the Equipment or any Bottles. Upon default, Company will have the right to exercise any or all of the following cumulative remedies and any other rights or remedies it may have at law or in equity: (i) terminate this Agreement without relieving Customer of its accrued and continuing obligations; (ii) declare immediately due and payable (as liquidated damages and not as penalty) all outstanding charges plus the balance of the Leased Equipment rental to the end of the term; and/or (iii) repossess the Equipment and Bottles. Customer waiving notice, legal process, or liability for trespass or other damage, or, declare it a total loss, and Customer will pay Company its replacement value. Customer waives any requirement that Company post a bond or other undertaking in a repossession proceeding. Customer will pay all of Company's costs, including reasonable collection and/or attorneys' fees, as a result of Customer's default or the exercise of Company's remedies.

10. **MOBILE PHONE DELIVERY SERVICE.** Company provides a mobile messaging service ("Mobile Messaging Service") to its Customers. The Mobile Messaging Service is utilized to provide information to Customers via their mobile phones about upcoming delivery of their purchase. Text messages or phone calls may be made using an auto dialer or prerecorded voice. If Customer wishes to receive the Mobile Messaging Service, Customer agrees to provide Company with a valid mobile number and to notify Company immediately of any changes to Customer's mobile number. Customer agrees that Company may make phone calls or send text messages through Customer's wireless provider. Company does not charge

recipients to receive text messages, however, messaging and data rates may apply. CUSTOMER IS RESPONSIBLE FOR ALL CHARGES AND FEES ASSOCIATED WITH TEXT MESSAGING IMPOSED BY THEIR WIRELESS SERVICE PROVIDER. Customer will receive approximately 5 messages per delivery. Customer agrees to indemnify, defend, and hold harmless Company, its officers, directors, employees, agents, licensors and suppliers from and against all losses, expenses, damages and costs of any kind (including reasonable attorneys, fees), resulting from any activity related to Customer's use of the Mobile Messaging Service, or from Customer providing Company with a mobile number that is not Customer's own mobile number. Customer agrees that Company will not be liable for failed, delayed, or misdirected delivery of any information sent through the Mobile Messaging Service; any errors in such information; any action Customer may or may not take in reliance on the information or Mobile Messaging Service; or any disclosure of information to third parties resulting from Customer's use of the Mobile Messaging Service.

11. ELECTRONIC BILLING AND NOTIFICATIONS: Customer agrees that Company may provide Customer with information regarding this Agreement by posting the information in Customer's account on the ReadyRefresh website and that doing so satisfies any obligation Company may have to provide the information in writing. Customer may have the right to withdraw consent and, when required by law, Company will provide Customer with paper copies upon request. To receive, access, and retain the notices, Customer must have internet access and a computer or device with a compatible browser; software capable of viewing PDF files; and the ability to print or download and store PDF files. Customer confirms that Customer is able to receive, access, and retain information on the website. Customer may withdraw consent or update contact information by calling Ready Refresh.

12. MISCELLANEOUS: Customer may not directly or indirectly transfer any of its rights under this Agreement and will not allow any third party to take possession of the Equipment or Bottles without Company's prior written consent. The terms of this Agreement may be waived or amended only in writing signed by Company and Customer. Failure or delay in exercising any right will not constitute a waiver. Customer grants Company authority to conduct credit investigations and Company retains the right to terminate this agreement at any time based on such information.

13. DISCLAIMER OF WARRANTY: COMPANY DOES NOT MANUFACTURE THE EQUIPMENT PROVIDED TO CUSTOMER, IF ANY, AND, UNLESS OTHERWISE SPECIFICALLY SET FORTH IN WRITING BY COMPANY, HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT, ITS SUITABILITY OR FITNESS FOR ANY PURPOSE OR MERCHANTABILITY. CUSTOMER ACCEPTS THE EQUIPMENT "AS IS." NO DEFECT IN OR UNFITNESS OF THE EQUIPMENT, NO LOSS OR DAMAGE, AND NO OTHER CONDITION WHATSOEVER WILL RELIEVE OR SUSPEND CUSTOMER'S OBLIGATIONS, WHICH ARE ABSOLUTE AND UNCONDITIONAL. TO THE FULL EXTENT PERMITTED BY LAW, COMPANY WILL INCUR NO LIABILITY WHATSOEVER TO CUSTOMER ARISING OUT OF OR IN CONNECTION WITH ANY DEFECT IN OR CONDITION OF THE EQUIPMENT OR ITS USE, OPERATION OR FUNCTION.

Nestle Waters North America SMS Terms and Conditions

*Introductory offer good for new customers only, upon credit approval, who, when prompted, select any delivery frequency option other than "one-time". Cannot be combined with other offers. New customers who sign up for home delivery service under this offer will receive a one-time account credit equal to 50% of their first account credit (excluding taxes, deposits, and fees) toward their first invoice and will not be charged a delivery fee/fuel surcharge on that first delivery. Maximum account credit is $50. Account credit cannot be redeemed for cash. Customer must purchase a minimum of $20.00 of beverages. New customers do not include any customers who have had a delivery through ReadyRefresh℠ by Nestlé in the past twelve months. Discount does not apply in applicable bottle deposit, sales tax, the purchase of accessories or the rental of dispenser equipment. Discount will only apply to purchase of dispenser if customer signs up for recurring delivery of 5-gallon bottles. If, as part of your plan, you receive free rent of a dispenser, the dispenser will be free for the first 12 months, after which you will be charged the then current standard rental fee. If dispenser shown is not available, substitute of equal value may be provided. LIMIT: One (1) account credit per customer account. Account and/or bottle deposits, activation fees, and certain restrictions apply. Plans and pricing subject to change at any time. Service available in most areas. Offer expires 4/2018. ©2018 Nestlé Waters North America, Inc.

Sitemap | Privacy Policy (updated) | Ad Options | Terms of Use | Terms & Conditions | FAQs | Safety & Storage | Careers 

# EXHIBIT 2

Home/ Terms & Conditions | ReadyRefresh Water & Beverage Delivery

# Terms and Conditions

> Agreement

> Delivery

> Equipment

> Use of equipment and bottles

> Term

> Prices

> Charges; surcharges, fees, deposits and refunds

> Risk of loss

> Default by customer; company's remedies

> Mobile phone delivery service

> Electronic billing and notifications

> Miscellaneous

> Disclaimer of Warranty

> Dispute Resolution

> Limitation of Liability

## Agreement

This Agreement governs your purchases of bottled water and other beverages and related products ("Products") and Equipment (as defined below) from Nestlé Waters North America Inc. ("Company"). The information you provide will be treated in accordance with our Privacy Policy, available here. If you do not provide Company all of the requested information, we may not be able to provide you with the requested goods or services.

THIS AGREEMENT CONTAINS A PROVISION THAT GENERALLY REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS, AND ALSO LIMITS THE REMEDIES AVAILABLE IN THE EVENT OF A DISPUTE. SEE THE DISPUTE RESOLUTION SECTION BELOW FOR MORE INFORMATION.

back to top ^

EXHIBIT A
Page 30

## Delivery

Customer will purchase Products from Company as ordered by Customer from time to time. Company reserves the right to subject all orders to a minimum delivery requirement as determined by Company from time to time per delivery, exclusive of any taxes, fees or surcharges. All orders are subject to credit approval. Service may not be available in all areas.

back to top ^

## Equipment

If Customer requests, Company will lease to Customer, and Customer will pay Company lease payments for, the coolers, filtration systems and/or equipment as agreed between Company and Customer ("Equipment"). Customer acknowledges that this is a true lease. If Customer purchases Equipment from Company, Customer will be responsible for all repair or replacement costs unless otherwise specified in Company's warranty, if any. AccuPure plans include standard installation of up to one hour's labor and 25 feet of standard installation equipment; Customer is responsible for all additional labor and materials costs. Installation will begin at the point Customer designates, Company's responsibility and equipment apply only from that point to the AccuPure delivery point, which will be designated by Customer. Customer will provide any permission necessary for alteration of the premises such as cutting or drilling.

back to top ^

## Use of equipment and bottles

Company will install the Equipment, at Customer's address provided by Customer to Company. If Customer's negligence, abuse or misuse causes damage requiring repair or replacement, Customer will pay Company all such costs on demand. The Equipment and multi-gallon bottles ("Bottles") are, and will at all times be, Company's sole and exclusive property, and Customer will have no right, title or interest except as provided in this Agreement. Customer can purchase the Equipment only if Customer and Company agree. Customer will use the Equipment and all Bottles only for Company's Products and will not reuse or refill Bottles for any purpose whatsoever. Customer will at all times operate and maintain the Equipment and Bottles in a safe, sanitary and proper manner in accordance with Company's instructions and clean and maintain the Equipment periodically and at least once every three months. Customer (i) will not remove the Equipment from Customer's location without Company's prior written consent, (ii) will not alter the Equipment in any manner, (iii) will permit only Company to repair the Equipment; (iv) will notify Company immediately if the Equipment or any Bottles are stolen, lost, damaged or destroyed, and (v) will keep the Equipment and Bottles free and clear of, and promptly notify the Company of, any levies, liens and encumbrances. Company may enter Customer's premises at reasonable times to inspect and repair the Equipment and to deliver or pick up Bottles.

back to top ^

## Term

The Initial Term of this Agreement will start on the earlier of: the date that the Equipment, if any, is installed by Company; or, for Customers who purchase Products only, on the first date that such Products are delivered to Customer; or on the date when Customer authorizes payment for Products, and will continue for the period set forth on the order form. If no date is set forth on the order form then the Initial Term shall be for one month from the date of first delivery. Upon expiration of the Initial Term, this Agreement will continue in effect on a month to month basis until

terminated by either Company or Customer on 30 days' notice. Notwithstanding the foregoing, the Initial Term for AccuPure Customers is one year from the date of installation. A Customer who terminates this Agreement before the end of the Initial Term may be subject to a one time early termination charge to compensate Company for, as applicable, the value of equipment and/or free Products or services provided to Customer and administrative, installation, labor and other costs of Customer's account, as follows: (a) Delivery Customers: up to $25; and (b) AccuPure Customers: up to $150; ALL CUSTOMERS: Upon expiration or termination of this Agreement, Customer will permit Company to retrieve the Equipment and/or Bottles, which will be in the same condition as received by Customer, reasonable wear and tear excepted. If Customer fails to return any Equipment or Bottles, Customer will pay Company the full replacement value.

back to top ⌃

## Prices

(a) DELIVERY CUSTOMERS: Equipment rental fees and prices for bottled water and other beverages and related products will not be increased during the first two months or during the Initial Term of this Agreement, whichever is shorter. Any price increase during the balance of the Initial Term will not exceed Company's then current regular non-introductory prices. (b) ACCUPURE CUSTOMERS: Leased AccuPure Equipment rental fees will not be increased during the first six months of the Initial Term of this Agreement. Any rental fee increase during the balance of the Initial Term will not exceed $5 per month. (c) ALL CUSTOMERS: Prices for Products and rental fees are subject to change. Prices of commodities such as coffee, cocoa, sugar, paper and related products will be reviewed on a regular basis and are subject to increase at any time.

back to top ⌃

## Charges; surcharges, fees, deposits and refunds

CUSTOMER WILL PAY ALL CHARGES FOR PRODUCTS, EQUIPMENT, AND ALL APPLICABLE SURCHARGES, TAXES AND FEES, INCLUDING, WITHOUT LIMITATION, (A) ALL BOTTLE DEPOSITS UP TO $10 PER BOTTLE AND/OR ACCOUNT DEPOSITS UP TO $100; (B) ANY APPLICABLE DELIVERY FEES OF UP TO $20 PER DELIVERY; (C) A FEE OF UP TO $5 FOR EACH PAPER INVOICE IN LIEU OF, OR IN ADDITION TO, AN ELECTRONIC INVOICE; (D) A FEE OF UP TO $8.99 PAYABLE IN THE EVENT CUSTOMER CANCELS A SCHEDULED DELIVERY ON LESS THAN 24 HOURS' PRIOR NOTICE; (E) A FEE OF UP TO $50 FOR THE RECONDITIONING OF EACH COOLER LEASED BY CUSTOMER AND PAYABLE UPON THE CANCELLATION OF SERVICE; (F) IN THE EVENT CUSTOMER IS IN DEFAULT ON THE PAYMENT OF ANY INVOICE FOR A PERIOD EXCEEDING 150 DAYS, A REINSTATEMENT FEE OF UP TO THE SUM OF (I) THE OUTSTANDING AMOUNT PLUS (II) 25% OF SUCH OUTSTANDING AMOUNT; AND (G) ALL APPLICABLE STATE BOTTLE DEPOSITS AND REDEMPTION VALUE ON ANY FREE AND PURCHASED PRODUCTS UPON CUSTOMER'S RECEIPT OF COMPANY'S INVOICE.

Customer acknowledges and agrees that, promptly after the delivery of any Products and Equipment, Company may invoice customer for all delivered Products and Equipment as well as any applicable surcharges, taxes and fees. Company may change its administrative, surcharges or other charges or deposit fees at any time with prior notice to Customer. If Customer does not pay any charge within thirty (30) days of the invoice date, Customer will pay Company a late fee not to exceed $20 per month. If the late fee exceeds the maximum rate allowed by applicable law, the late charge will be equal to such maximum rate. Customer will make all payments due without set

off, counterclaim or defense. Payment of invoice by Customer is an acknowledgment of acceptance and delivery. At Company's sole discretion, applicable refunds, if any, may be credited back to the credit card used for payment.

For recurring Deliveries with automatic payment, Company will charge Customer's authorized payment method per the billing period described when Customer authorized automatic payment. Customer can update the payment method by visiting the ReadyRefresh website. If Customer's payment method expires and Customer does not update or change the payment method, Customer shall remain responsible for any uncollected amounts.

back to top ^

## Risk of loss

Customer assumes risk of loss or damage to the Equipment and Bottles in Customer's possession and is responsible for all liability resulting from their use and operation. Customer will pay Company upon demand costs to repair or replace any lost, stolen, damaged or destroyed Equipment and/or Bottles, as determined by Company. Customer will, to the full extent permitted by law, indemnify, defend and hold harmless Company, its parent, affiliates, officers, directors, employees and agents from any loss, damage, liability, cost, fine or expense, including without limitation, reasonable attorneys' fees, incurred in connection with this Agreement. This provision will survive termination or expiration of this Agreement.

back to top ^

## Default by customer; company's remedies

Customer will be in default if Customer: (a) fails to pay any amount when due; (b) fails to perform or violates any other term or condition and fails to cure the same within ten (10) days after the occurrence; or (c) abandons or abuses the Equipment or any Bottles. Upon default, Company will have the right to exercise any or all of the following cumulative remedies and any other rights or remedies it may have at law or in equity: (i) terminate this Agreement without relieving Customer of its accrued and continuing obligations; (ii) declare immediately due and payable (as liquidated damages and not as penalty) all outstanding charges plus the balance of the Equipment rental to the end of the term; (iii) subject Customer to a reinstatement fee as described in the section entitled "Charges; surcharges, fees, deposits and refunds;" and/or (iv) repossess the Equipment and Bottles, and Customer hereby waives notice, legal process, or liability for trespass or other damage by Company or its third-party representatives; or, Company may declare it a total loss, and Customer will pay Company its replacement value. Customer waives any requirement that Company post a bond or other undertaking in a repossession proceeding. Customer will pay or reimburse all of Company's costs, including reasonable collection and/or attorneys' fees, as a result of Customer's default or the exercise of Company's remedies.

back to top ^

## Mobile phone delivery service

Company provides a mobile messaging service ("Mobile Messaging Service") to its Customers. The Mobile Messaging Service is utilized to provide information to Customers via their mobile phones about upcoming delivery of their purchases. Text messages or phone calls may be made using an auto dialer or prerecorded voice. If Customer wishes to receive the Mobile Messaging Service, Customer agrees to provide Company with a valid mobile number and to notify Company immediately of any changes to Customer's mobile number. Customer agrees that Company may make phone calls or send text messages through Customer's wireless provider to the number

Customer provides. Company does not charge recipients to receive text messages, however, messaging and data rates may apply. CUSTOMER IS RESPONSIBLE FOR ALL CHARGES AND FEES ASSOCIATED WITH TEXT MESSAGING IMPOSED BY THEIR WIRELESS SERVICE PROVIDER. Customer will receive approximately 5 messages per delivery. Customer agrees to indemnify, defend, and hold harmless Company, its officers, directors, employees, agents, licensors and suppliers from and against all losses, expenses, damages and costs of any kind (including reasonable attorneys, fees), resulting from any activity related to Customer's use of the Mobile Messaging Service, or from Customer providing Company with a mobile number that is not Customer's own mobile number. Customer agrees that Company will not be liable for failed, delayed, or misdirected delivery of any information sent through the Mobile Messaging Service; any errors in such information; any action Customer may or may not take in reliance on the information or Mobile Messaging Service; or any disclosure of information to third parties resulting from Customer's use of the Mobile Messaging Service. Company's Privacy Policy is available on the ReadyRefresh website.

back to top ^

## Electronic billing and notifications

Customer agrees that Company may provide Customer with information regarding this Agreement by posting the information in Customer's account on the ReadyRefresh website and that doing so satisfies any obligation Company may have to provide the information in writing. Customer may have the right to withdraw consent and, when required by law, Company will provide Customer with paper copies upon request. To receive, access, and retain the notices, Customer must have Internet access and a computer or device with a compatible browser; software capable of viewing PDF files; and the ability to print or download and store PDF files. Customer confirms that Customer is able to receive, access, and retain information on the website. Customer may withdraw consent or update contact information by calling ReadyRefresh.

back to top ^

## Miscellaneous

Customer may not directly or indirectly transfer any of its rights under this Agreement and will not allow any third party to take possession of the Equipment or Bottles without Company's prior written consent. NWNA reserves the right to change any of the terms of this Agreement at any time for any reason. NWNA will notify Customer of such changes by posting an updated Agreement here or by asking Customer to read and accept a new version. Customer's continued purchase or receipt of Products after an updated Agreement is posted constitutes acceptance of the modified Agreement. Customer cannot modify this Agreement unless NWNA agrees to the change in writing. Failure or delay in exercising any right will not constitute a waiver. Customer grants Company authority to conduct credit investigations and Company retains the right to terminate this Agreement at any time based on such information. This Agreement, together with any additional terms, rules, the Company's Privacy Policy , and any other regulations, procedures and policies which Company refers to and which are hereby incorporated by reference, contain the entire understanding and agreement between Customer and Company concerning this Agreement, and transactions involving Products, Bottles, and Equipment and supersedes any and all prior understandings. To the extent that there is a conflict between this Agreement and any additional terms for Products, Bottles, or Equipment, the additional terms shall govern. If any provision of this Agreement is held to be illegal, invalid or unenforceable, this shall not affect any other provisions

Terms & Conditions | ReadyRefresh Water & Beverage Delivery

and the Agreement shall be deemed amended to the extent necessary to make it legal, valid and enforceable. Any provision that must survive in order to allow us to enforce its meaning shall survive the termination of this Agreement.

back to top ^

## Disclaimer of Warranty

COMPANY DOES NOT MANUFACTURE THE EQUIPMENT PROVIDED TO CUSTOMER, IF ANY, AND, NOTWITHSTANDING ANYTHING TO THE CONTRARY, HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE EQUIPMENT, ITS SUITABILITY OR FITNESS FOR ANY PURPOSE OR MERCHANTABILITY. CUSTOMER ACCEPTS THE EQUIPMENT "AS IS." NO DEFECT IN OR UNFITNESS OF THE EQUIPMENT, NO LOSS OR DAMAGE AND NO OTHER CONDITION WHATSOEVER WILL RELIEVE OR SUSPEND CUSTOMER'S OBLIGATIONS, WHICH ARE ABSOLUTE AND UNCONDITIONAL. TO THE FULL EXTENT PERMITTED BY LAW, COMPANY WILL INCUR NO LIABILITY WHATSOEVER TO CUSTOMER ARISING OUT OF OR IN CONNECTION WITH ANY DEFECT IN OR CONDITION OF THE EQUIPMENT OR ITS USE, OPERATION OR FUNCTION.
Some jurisdictions do not allow exclusion of implied warranties, so the above exclusions may not apply to Customer.

back to top ^

## Dispute Resolution

TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER AND COMPANY AGREE TO SUBMIT EXCLUSIVELY ANY CLAIM, CONTROVERSY OR DISPUTE ARISING OUT OF OR RELATING TO PRODUCTS, EQUIPMENT, BOTTLES, THIS AGREEMENT OR ANY OTHER POLICIES OR OTHER TERMS INCORPORATED THEREIN (INCLUDING THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION, ENFORCEABILITY, VALIDITY, OR RIGHTS UNDER ANY OF ANY OF THE FOREGOING) (EACH, A "DISPUTE") FOR RESOLUTION BY CONFIDENTIAL, INDIVIDUAL, BINDING ARBITRATION, EXCEPT THAT CUSTOMER MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF CUSTOMER'S CLAIMS QUALIFY.
THE PARTIES AGREE THAT THE ARBITRATOR, AND NOT ANY FEDERAL, STATE, PROVINCIAL OR LOCAL COURT OR AGENCY, SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES RELATING TO THE INTERPRETATION, APPLICABILITY, ENFORCEABILITY OR FORMATION OF THIS AGREEMENT TO ARBITRATE, INCLUDING ANY CLAIM THAT ALL OR ANY PART OF THIS AGREEMENT TO ARBITRATE IS VOID OR VOIDABLE. THE ARBITRATOR SHALL ALSO BE RESPONSIBLE FOR DETERMINING ALL THRESHOLD ARBITRABILITY ISSUES, INCLUDING ISSUES RELATING TO WHETHER THE TERMS ARE UNCONSCIONABLE OR ILLUSORY AND ANY DEFENSE TO ARBITRATION, INCLUDING WAIVER, DELAY, LACHES OR ESTOPPEL.
TO THE FULLEST EXTENT PERMITTED BY LAW: (I) CUSTOMER EXPRESSLY WAIVES ANY RIGHT CUSTOMER MAY HAVE TO ARBITRATE A DISPUTE AS A CLASS ACTION; AND (II) CUSTOMER ALSO EXPRESSLY WAIVES CUSTOMER'S RIGHT TO A JURY TRIAL.
THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS LIMITED. HOWEVER, AN ARBITRATOR CAN AWARD ON AN INDIVIDUAL BASIS THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING INJUNCTIVE AND DECLARATORY RELIEF OR STATUTORY DAMAGES), AND MUST FOLLOW THE TERMS OF THIS AGREEMENT AS A COURT WOULD.

THE ARBITRATION WILL BE HELD IN CONNECTICUT. IF CUSTOMER INFORMS COMPANY THAT THIS LOCATION IS NOT CONVENIENT FOR CUSTOMER, COMPANY WILL WORK WITH CUSTOMER TO DETERMINE A MUTUALLY CONVENIENT LOCATION. ANY DISAGREEMENTS REGARDING THE FORUM FOR ARBITRATION WILL BE SETTLED BY THE ARBITRATOR.

DISPUTES WILL BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ACTION. IN THE EVENT THAT ARBITRATION IS NOT PERMITTED BY APPLICABLE LAW: (I) THE PARTIES EXPRESSLY AGREE THAT ANY DISPUTE WILL BE BROUGHT AND HEARD SOLELY AND EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF COMPETENT JURISDICTION LOCATED IN CONNECTICUT. THE PARTIES WAIVE ANY PLEA OR DEFENSE THAT SUCH COURTS ARE NOT THE APPROPRIATE VENUE OR THAT THEY ARE NOT SUBJECT TO PERSONAL JURISDICTION OF SUCH COURTS.

THE ARBITRATION WILL BE ADMINISTERED BY JAMS. CUSTOMER MAY OBTAIN A COPY OF THE RULES OF JAMS BY CONTACTING THE ORGANIZATION. EACH PARTY SHALL AGREE ON ONE ARBITRATOR TO CONDUCT THE ARBITRATION. IN THE EVENT THE PARTIES CANNOT AGREE ON AN ARBITRATOR, THE ARBITRATOR WILL BE SELECTED IN ACCORDANCE WITH THE JAMS RULES.

IF CUSTOMER INITIATES ARBITRATION, CUSTOMER'S ARBITRATION FEES WILL BE LIMITED TO THE FILING FEE SET FORTH BY JAMS. REGARDLESS OF WHO INITIATES ARBITRATION, COMPANY WILL PAY CUSTOMER'S SHARE OF ARBITRATION FEES (NOT INCLUDING ATTORNEYS' FEES) UP TO A MAXIMUM OF $2,500. IF THE ARBITRATOR RULES AGAINST COMPANY, IN ADDITION TO ACCEPTING WHATEVER RESPONSIBILITY IS ORDERED BY THE ARBITRATOR, COMPANY WILL REIMBURSE CUSTOMER'S REASONABLE ATTORNEYS' FEES AND COSTS UP TO A MAXIMUM OF $5,000, REGARDLESS OF WHO INITIATED THE ARBITRATION, UNLESS THE ARBITRATOR FINDS SOME OR ALL OF CUSTOMER'S CLAIMS TO BE FRIVOLOUS OR TO HAVE BEEN BROUGHT IN BAD FAITH. IN ADDITION, IF THE ARBITRATOR RULES IN COMPANY'S FAVOR, IT WILL NOT SEEK REIMBURSEMENT OF ATTORNEYS' FEES AND COSTS, REGARDLESS OF WHO INITIATED THE ARBITRATION, UNLESS THE ARBITRATOR FINDS SOME OR ALL OF CUSTOMER'S CLAIMS TO BE FRIVOLOUS OR TO HAVE BEEN BROUGHT IN BAD FAITH.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION, TO THE EXTENT EITHER PARTY IN ANY MANNER HAS VIOLATED OR THREATENED TO VIOLATE THE OTHER PARTY'S INTELLECTUAL PROPERTY RIGHTS, THE NON-BREACHING PARTY MAY SEEK INJUNCTIVE OR OTHER APPROPRIATE RELIEF IN ANY STATE, PROVINCIAL OR FEDERAL COURT OF COMPETENT JURISDICTION.

EXCEPT AS OTHERWISE PROHIBITED BY LAW, ANY DISPUTE MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE DATE THE CAUSE OF ACTION ARISES.

IN THE EVENT THAT ANY PROVISION OF THE AGREEMENT TO ARBITRATE IS HELD INVALID OR UNENFORCEABLE, ALL OTHER TERMS WITHIN THE AGREEMENT TO ARBITRATE SHALL REMAIN IN FULL FORCE AND EFFECT.

back to top ^

## Limitation of Liability

TO THE FULLEST EXTENT ALLOWED BY LAW, AND EXCEPT AS EXPRESSLY ESTABLISHED IN THIS AGREEMENT, COMPANY IS NOT LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, CONSEQUENTIAL OR EXEMPLARY DAMAGES ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF PROFITS, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), TO THE

EXTENT THE FOREGOING LIMITATION OF LIABILITY IS, IN WHOLE OR IN PART, HELD TO BE INAPPLICABLE OR UNENFORCEABLE FOR ANY REASON, THEN THE AGGREGATE LIABILITY OF COMPANY FOR ANY REASON AND UPON ANY CAUSE OF ACTION (INCLUDING, WITHOUT LIMITATION, NEGLIGENCE, STRICT LIABILITY AND OTHER ACTIONS IN CONTRACT OR TORT) IN ANY WAY RELATED TO THE SITE OR THIS AGREEMENT SHALL BE LIMITED TO DIRECT DAMAGES ACTUALLY INCURRED UP TO TWO HUNDRED FIFTY DOLLARS ($250).

Some jurisdictions, such as New Jersey, do not allow limitations on damages. In the event the applicable jurisdiction does not allow the limitation on liability to the extent indicated above, our liability in such jurisdictions shall be limited to the extent permitted by law.

back to top ∧

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Alexis Djivre, SBN 245138
LAW OFFICE OF ALEXIS DJIVRE
1155 N. Central Ave., Ste. 201
Glendale, CA 91202
TELEPHONE NO.: 213-700-3436  FAX NO.:
ATTORNEY FOR (Name): Plaintiffs, DONELL COREY KENDALL, et al.

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**FILED**
Superior Court of California
County of Los Angeles

SEP 23 2020

Sherri R. Carter, Executive Officer/Clerk of Court

By: Kristina Vargas, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
DONELL COREY KENDALL, et. al. v. NESTLE WATERS N.A., etc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 20STCV36528 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action (specify): 7 - B&P 17200, CC 1750, BREACH OF GOOD FAITH, etc.
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: September 21, 2020

Alexis B. Djivre
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

For your protection and privacy, please press the Clear

| SHORT TITLE: KENDALL v. NESTLE WATERS | CASE NUMBER 20STCV36528 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

## CIVIL CASE COVER SHEET ADDENDUM
## AND STATEMENT OF LOCATION

| SHORT TITLE: KENDALL v. NESTLE WATERS | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation       Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

EXHIBIT A
Page 41

| SHORT TITLE: KENDALL v. NESTLE WATERS | CASE NUMBER |
|---|---|

| | | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C - Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|---|
| **Judicial Review** | | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages<br>☐ A6123  Workplace Harassment With Damages<br>☐ A6124  Elder/Dependent Adult Abuse Case With Damages<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE  KENDALL v. NESTLE WATERS | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases.)

| REASON:  ☑ 1. ☑ 2. ☑ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS. |
|---|---|
| CITY:                                              STATE:        ZIP CODE: | |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the __Central (Los Angeles)__ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: __September 21, 2020__

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**·PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY ·COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

EXHIBIT A
Page 43

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**09/23/2020**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ K. Vargas _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>20STCV36528 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | William F. Highberger | 10 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record          Sherri R. Carter, Executive Officer / Clerk of Court

on 09/24/2020 _____                                         By K. Vargas _____, Deputy Clerk
   (Date)

LACIV 190 (Rev 6/18)                    **NOTICE OF CASE ASSIGNMENT — UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
EXHIBIT A
Page 45

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 14

**20STCV36528**                                                      October 13, 2020
**DONELL COREY KENDALL vs NESTLE WATERS NORTH**                              9:15 AM
**AMERICA, INC.**

Judge: Honorable Kenneth R. Freeman                 CSR: None
Judicial Assistant: B. Guerrero                     ERM: None
Courtroom Assistant: T. Lewis                       Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re: Reassignment of Case;

This case was ordered transferred to the Assistant Supervising Judge of Complex Civil
Litigation, Judge Kenneth R. Freeman in Department 14, for reassignment purposes only.

The case is reassigned for the following reason: Peremptory Challenge to Judicial Officer
William F. Highberger.

Good cause appearing and on order of the Court, the above matter is reassigned to Judge Elihu
M. Berle in Department 6 at the Spring Street Courthouse for all further proceedings.

If any appearing party has not yet exercised a peremptory challenge under Code of Civil
Procedure section 170.6, peremptory challenges by them to the newly assigned judge must be
timely filed within the 15 day period specified in Code of Civil Procedure section 170.6, with
extensions of time pursuant to Code of Civil Procedure section 1013 if service is by mail.
Previously non-appearing parties, if any, have a 15-day statutory period from first appearance to
file a peremptory challenge (Government Code section 68616(1)).

Counsel for Plaintiff is to give notice.

Certificate of Mailing is attached.

EXHIBIT A
Page 46

FILED
Superior Court of California
County of Los Angeles

OCT 15 2020

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Marisela Fregoso

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

DONELL COREY KENDALL, individually, and on behalf of all others similarly situated,

                              Plaintiff(s),

    vs.

NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive,

                          Defendant(s).

**Case No.:  20STCV36528**

**INITIAL STATUS CONFERENCE ORDER (COMPLEX LITIGATION PROGRAM)**

Case Assigned for All purposes to Judge Elihu M. Berle

Department 6
Date: December 11, 2020
Time:  11:00 a.m.

1       This case has been assigned for all purposes to Judge Elihu M. Berle in the

2 Complex Litigation Program.  An Initial Status Conference is set for December 11, 2020,

3 at 11:00 a.m. in Department 6 located in the Los Angeles Superior Courts at United States

4 Courthouse at 312 N. Spring Street, Los Angeles, California 90012.

5       Counsel for all parties are ordered to attend the Initial Status Conference remotely

6 via LA COURT CONNECT. The attorney portal can be found on the Court's website at

7 lacourt.org. NO PERSONAL APPERANCES WILL BE ALLOWED, unless special

8 permission is granted upon appropriate application.

9       Plaintiff's counsel is directed to serve a copy of this Initial Status Conference Order

10 on all parties, within five (5) days of service of this order.  If any defendant has not yet

11 been served in this action, service is to be completed within twenty (20) days of the date of

12 this order.

13       The Court orders counsel to prepare for the Initial Status Conference by identifying

14 and discussing the central legal and factual issues in the case.  Counsel for plaintiff is

15 ordered to initiate contact with counsel for defense to begin this process.  Counsel then

16 must negotiate and agree, as possible, on a case management plan.

17       Counsel must file a Joint Initial Status Conference Statement seven (7) calendar

18 days before the Initial Status Conference.  The Joint Initial Status Conference Statement

19 must be filed on line-numbered pleading paper and must specifically address each of the

20 below numbered items.  Do not use the Judicial Council Form CM-110 (Case Management

21 Statement).

22      **1. PARTIES AND COUNSEL:** Please list all presently named plaintiffs

23         and/or class representatives and presently named defendants, together with all

24         counsel of record, including counsel's contact and email information.

25      **2. ELECTRONIC SERVICE OF PAPERS:** for administrative efficiency

26         and conservation of resource for the parties and court, the complex program

27         requires the parties in every new case to use a third-party cloud service, such as:

28         ■ Case Anywhere (www.caseanywhere.com),

1    ■ CaseHomePage ([www.casehomepage,com](www.casehomepage,com)), or

2    ■ File&ServeXpress ([www.lexisnexis.com/fileandserve](www.lexisnexis.com/fileandserve)).

3    The parties are to select one of these vendors and submit the parties' choice

4    when filing the Joint Initial Status Conference Statement.  If the parties cannot

5    agree, the court will select the vendor at the Initial Status Conference.

6    Electronic service is not the same as electronic filing.  Only traditional methods

7    of filing by physical delivery of original papers or by fax filing are presently

8    available.

9    **3. CLAIMS AND DEFENSES:**  Set forth a brief description of the core factual

10   and legal issues, derived from Plaintiff's claims and defendant's defenses.

11   **4. POTENTIAL ADDITIONAL PARTIES:**  Does any plaintiff presently

12   intend to add more plaintiffs and/or class representatives?  If so, and if known, by what

13   date and by what name will these parties be identified? Does any plaintiff presently intend

14   to name more defendants?  If so, and if known, by what date and by what name will these

15   defendants be identified?   Does any appearing defendant presently intend to file a cross-

16   complaint?  If so, who will be named as a cross-defendant?

17   **5. IMPROPERLY NAMED DEFENDANT(S):**  Does any party contend that

18   the complaint names the wrong person or entity, please explain.

19   **6. (For class actions) ADEQUACY OF PROPOSED CLASS**

20   **REPRESENTATIVE(S):**  Does any party contend one or more named plaintiffs might

21   not be an adequate class representative. If so, please explain.

22   **7. (For class actions) FOR CLASS ACTIONS ESTIMATED SIZE:**  What is

23   the estimated size of the putative class?

24   **8. (For class actions) OTHER ACTIONS WITH OVERLAPPING CLASS**

25   **DEFINITIONS:**  Are there other cases with overlapping class definitions? If so, please

26   identify the court, the short caption title, the docket number, and the case status.

27

28

INITIAL STATUS CONFERENCE ORDER (COMPLEX LITIGATION PROGRAM)

**9. ARBITRATION AGREEMENTS AND/OR CLASS ACTION WAIVER CLAUSES:** Does any party contend there is an arbitration agreement and/or class action waiver. If so, please discuss.

**10. POTENTIAL EARLY CRUCIAL MOTIONS:** Are there any issues that can be identified and resolved early. If so, please identify and set forth proposed procedures for resolution.

**PLEASE NOTE: By stipulation a party may move for summary adjudication of a legal issues or a claim for damages that does not completely dispose of a cause of action, an affirmative defense, or an issue of duty. (C.C.P. § 437c(t)).**

**11. PROTECTIVE ORDERS:** Parties considering an order to protect confidential information from general disclosure should consider the model protective orders found on the Los Angeles Superior Court Website under "Civil Tools for Litigators."

**12. DISCOVERY:** Counsel are to discuss a plan of discovery. In class actions, prior to class certification, the court generally allows discovery on matters relevant to class certification, which depending on circumstances, sometimes may include some factual issues also touching the merits.

**13. INSURANCE COVERAGE:** Please state (1) if there is insurance for indemnity or reimbursement, and (2) whether there are any insurance coverage issues which might affect settlement.

**14. ALTERNATIVE DISPUTE RESOLUTION:** Counsel are requested to discuss ADR and proposed neutrals to conduct such proceedings.

**15. TIMELINE FOR CASE MANAGEMENT:** Counsel to propose future dates for:

- ■   The next status conference,
- ■   A schedule for alternative dispute resolution,
- ■   A filing deadline for the motion for class certification, and
- ■   Filing deadlines and descriptions for other anticipated non-discovery motions.

INITIAL STATUS CONFERENCE ORDER (COMPLEX LITIGATION PROGRAM)

1       **PENDING FURTHER ORDERS OF THIS COURT,** and except as otherwise

2 provided in this Initial Status Conference Order, ***these proceedings are stayed, except for***

3 ***service of summons and complaint and filing of Notice of Appearance.***   This stay shall

4 preclude the filing of any answer, demurrer, motion to strike, or motions challenging the

5 jurisdiction of the Court.   Any defendant may file a Notice of Appearance for purposes of

6 identification of counsel and preparation of a service list.   The filing such a Notice of

7 Appearance shall be without prejudice to any challenge to the jurisdiction of the Court,

8 substantive or procedural challenges to the Complaint, any affirmative defense, and the

9 filing of any cross-complaint in this action.   This stay is issued to assist the Court and the

10 parties in managing this "complex" case.   Although the stay applied to discovery, this stay

11 shall not preclude the parties from informally exchanging documents that may assist in

12 their initial evaluation of the issues presented in this case.

13

14

15

16

17

18

19 Dated:    OCT 1 5 2020

20                               HON. ELIHU M. BERLE

                              JUDGE OF THE SUPERIOR COURT

21

22

23

24

25

26

27

28

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 6

**20STCV36528**                                                      October 15, 2020
**DONELL COREY KENDALL vs NESTLE WATERS NORTH**                       10:04 AM
**AMERICA, INC.**

Judge: Honorable Elihu M. Berle                CSR: None
Judicial Assistant: M. Fregoso                 ERM: None
Courtroom Assistant: None                      Deputy Sheriff: M. Molinar

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order

By this order, the Court determines this case to be Complex according to Rule 3.400 of the California Rules of Court. The Clerk's Office has randomly assigned this case to this department for all purposes.

By this order, the Court stays the case, except for service of the Summons and Complaint. The stay continues at least until the Initial Status Conference. Initial Status Conference is set for 12/11/2020 at 11:00 AM in this department. At least 10 days prior to the Initial Status Conference, counsel for all parties must discuss the issues set forth in the Initial Status Conference Order issued this date. The Initial Status Conference Order is to help the Court and the parties manage this complex case by developing an orderly schedule for briefing, discovery, and court hearings. The parties are informally encouraged to exchange documents and information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of Appearance shall not constitute a waiver of any substantive or procedural challenge to the Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to Code of Civil Procedure Section 170.6.

Counsel are directed to access the following link for information on procedures in the Complex litigation Program courtrooms:  http://www.lacourt.org/division/civil/CI0037.aspx

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand

EXHIBIT A
Page 52

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 6

**20STCV36528**                                                    October 15, 2020
**DONELL COREY KENDALL vs NESTLE WATERS NORTH**                    10:04 AM
**AMERICA, INC.**

Judge: Honorable Elihu M. Berle            CSR: None
Judicial Assistant: M. Fregoso             ERM: None
Courtroom Assistant: None                  Deputy Sheriff: M. Molinar

dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Los Angeles Superior Court, within 10 days of service of this order.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within 7 days of service.

PARTIES SHALL FILE A JOINT INITIAL STATUS CONFERENCE REPORT 7 DAYS PRIOR TO THE INITIAL STATUS CONFERENCE.

Certificate of Mailing is attached.