1  Azar Mouzari, SBN 263461
2  BEVERLY HILLS TRIAL ATTORNEYS, P.C.
   468 N. Camden Drive, Suite 238
3  Beverly Hills, CA 90210
   azar@bhtrialattorneys.com
   (310) 858-5567
4
5  Alexis Djivre, SBN 245138
   LAW OFFICE OF ALEXIS DJIVRE
6  1155 N. Central Avenue, Suite 201
   Glendale, CA 91202
7  alexisdjivre@gmail.com
   (213) 700-3436

8                 UNITED STATED DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11 DONELL COREY KENDALL,                 ) **CASE NO. 2:20-cv-10511-CAS(Ex)**
   individually, and on behalf of all others )
12 similarly situated,                     ) Hon. Christina A. Snyder – 8D
                                           )
13           Plaintiffs,                   ) **FIRST AMENDED COMPLAINT**
                                           ) **FOR DAMAGES**
14       v.                               )
                                           ) **[CLASS ACTION]**
15 NESTLE WATERS NORTH AMERICA,           )
16 INC., doing business as READY          ) **(1) VIOLATION OF BUSINESS &**
   REFRESH, BY NESTLE, and DOES 1         ) **PROFESSIONS CODE SECTIONS**
17 through 20, inclusive,                  ) **17200, ET SEQ. ("UCL")**
                                           )
18           Defendants.                   ) **(2) VIOLATION OF CIVIL CODE**
                                           ) **SECTIONS 1750, ET SEQ. ("CLRA")**
19                                         )
                                           ) **(3) BREACH OF THE IMPLIED**
20                                         ) **COVENANT OF GOOD FAITH**
                                           ) **AND FAIR DEALING**
21                                         )
                                           ) **(4) VIOLATION OF CALIFORNIA**
22                                         ) **CIVIL CODE SECTION 1671**
                                           )
23                                         ) **[DEMAND FOR JURY TRIAL]**
                                           )
24

25         COMES   NOW   Plaintiff DONELL   COREY   KENDALL   ("Plaintiff"   or

26 "KENDALL"), individually, and on behalf of all others similarly situated (collectively

27 "Plaintiffs"), and through their counsel of record, Beverly Hills Trial Attorneys, P.C. and the

28 Law Office of Alexis Djivre, file this class action complaint against NESTLE WATERS

NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive ("Defendants" or "NESTLE"), seeking damages and relief on behalf of themselves and for all others similarly situated for violation of California's Unfair Competition Law - *Business & Professions Code* sections 17200, *et seq*. ("UCL"), California's Consumer Legal Remedies Act - *Civil Code* sections 1750, *et seq*. ("CLRA"), and related claims as stated herein as below.  Unless explicitly stated to the contrary, all allegations are based upon information and belief.

## **INTRODUCTION**

Defendants NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive, are a retail beverage delivery service that provides bottled water and other beverages to customers' homes and offices on a monthly subscription basis.  Plaintiff DONELL COREY KENDALL, and others similarly situated, purchased water and other beverages from the Defendants pursuant to contract.  Because Plaintiffs signed up for their beverage delivery either online or on the telephone, they never received formal written contracts from Defendants.

Plaintiff KENDALL signed up for recurring delivery of bottled water from NESTLE at early as 2015.  During the summer of that year, Plaintiff KENDALL realized he was being assessed a flat fee of $15 for making late payments on beverage delivery.[1]  When he signed up for the service, he was told that he had 30 days to pay his bill.  In actuality, the billing date was only 20 days from the "pay by" date.  Because his monthly bills were usually only $30 or so, Plaintiff could not understand why he was being charged 50% or more of that amount for a late fee, and why this late fee was assessed a mere 20 days from the "pay by" date.[2]

---

[1] That late fee increased 25% to $20 at the beginning of 2017.

[2] Sparkletts, the only other major water delivery service in Southern California, charges a flat late fee of $10 after 60 days.  Assuming that a Nestle adopted the late fee practice of one of its competitors, Sparkletts, with respect to Plaintiff KENDALL's invoices, and assuming Plaintiff KENDALL remitted payment late each and every month, the maximum amount that would be assessed under that calculus would be $60 on an average annual invoice of $360, amounting to 17% penalty per year, which is less than the 18% allowed by law.

*PLAINTIFFS' FIRST AMENDED COMPLAINT*
*[CLASS ACTION]*

Accordingly, he called NESTLE's customer service to complain about the charge.  The customer service representative apologized and reversed the fee.  Over the course of approximately three years, Plaintiff KENDALL had contacted NESTLE's customer service numerous times to complain about the excessive late fee.  On each occasion, the representative would apologize and reverse the charge.  It was Plaintiff KENDALL's understanding that NESTLE would not have reversed the charges consistently and without exception each and every time he took time to contact NESTLE's customer service department unless NESTLE was aware that the late fee was excessive, unfair and/or vague as per the terms of the subscription agreement.  Plaintiff KENDALL was informed on each occasion he contacted NESTLE's customer service department that the late fee would be reversed.  Based on these interactions and NESTLE's own continuous conduct, Plaintiff KENDALL believed that the late fee was assessed by mistake given that it represented more than 50% of his monthly bill.

In approximately early 2018, Plaintiff KENDALL saw an online offer on Defendants' website, which detailed the terms and conditions of their beverage service by recurring delivery. (See Exhibit "1".) [3]  Although he was aware of the late fee, and had been assessed and paid late fees over the years, it was the first time he read the specifics of the late fee provision.  The terms were contained in Paragraph 7 of the offer.  In approximately 6.5-point Arial font, the term stated, "If Customer does not pay any charge **within thirty (30) days of the invoice date**, Customer will pay Company **the greater of (i) a late fee not to exceed $20**

---

[3] Exhibit "1" is a copy of the offer that was advertised on Defendants' website in early 2018, which Plaintiffs believe to be similar, if not identical, to the terms and conditions of the "contract" Plaintiff KENDALL entered into as early as of 2015, with the exception that the late fee was $15.  The $20 late fee, instituted in early 2017 still exists, and is listed on the Terms and Conditions section (See Exhibit "2") of the ReadyRefresh Water & Beverage Delivery website at:
https://www.readyrefresh.com/en/terms?gclid=Cj0KCQjw9b_4BRCMARIsADMUIyoVa6ZmNj95gNJc8fbyNLqeIKedINH4GfCGqjX0hhUJQNyhB_pw1MIaAvG1EALw_wcB&gclsrc=aw.ds   **Notably, the new terms no longer state that the alternate fee could be interest of 1.5% per month.**

**per month, or (ii) interest of 1.5% per month on any unpaid amount from the invoice date until paid. <u>If the late fee or interest rate exceeds the maximum rate allowed by law, the late charge will be equal to such maximum rate</u>**." Defendants always charged the $20 fee (previously $15), despite the fact that that fee exceeded the maximum rate allowed by law. Also, the due date for payment of the invoice was always 20 days, not 30 days from the invoice date.

When KENDALL entered into an agreement to purchase water delivery services from the Defendants, he was aware of the existence of the late fee policy. However, he assumed he would be charged an amount proportionate to the charge for the water. Reading the 2018 terms online, it was his understanding that he should have been charged 1.5% of the balance, which he believed was the maximum allowable by California law.

In fact, the flat fee of $20 was often in excess of seventy percent (70%) per month of the actual cost of the beverage service. Plaintiffs assert that California law disfavors service charges, late fees and finance charges in excess of eighteen percent (18%) per annum or 1.5% per month, and that the "maximum rate" allowed by applicable law is, in fact, 18% per annum. Defendants consistently charged Plaintiffs late fees substantially in excess of that amount, and assessed the late fee after only 20 days, and not after 30 days as specified in the written terms and conditions.

Plaintiff DONELL COREY KENDALL brings this action on behalf of himself and other similarly situated Class members pursuant to *Rule* 23(a), (b)(1) and (b)(3) of the *Federal Rules of Civil Procedure*, and seeks certification for the Class of consumers who have entered into "contracts" with Defendants for the delivery of bottled water and other beverages, and were charged late fees that were in excess of 1.5% per month, in order to obtain redress for those who have paid those unlawful fees. Plaintiff seeks to obtain damages, restitution, and other appropriate relief in the amount by which Defendants were unjustly enriched as a result of its deceptive and unlawful practices. Finally, Plaintiffs seek reasonable attorneys' fees pursuant to California *Code of Civil Procedure* section 1021.5, as this lawsuit

seeks the enforcement of an important right affecting the public interest, and satisfies that statutory requirements for an award of attorneys' fees.

## PARTIES

### PLAINTIFFS

1.      Plaintiff DONELL COREY KENDALL, is, and at all times relevant herein, was a resident of the City and County of Los Angeles, State of California.  Plaintiff purchased water from the Defendants, and each of them, from at least as early as 2015 to approximately late 2018.  Over the course of that time period, there were months where in which Defendant NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH charged him late fees for each monthly bill that he failed to pay his beverage delivery service bill by the "pay by" date.  From at least as of 2015 to the end of 2016, the fee was $15.  Then, at the beginning of 2017, the late fee went up 25% to $20.  When Plaintiff entered into an agreement to purchase water delivery services from the Defendants, it was his understanding that he had 30 days to pay his bill.  In actuality, the "pay by" date was only 20 days from the "billing date."  Additionally, Plaintiff was unaware that the late fee would always be the flat fee, which was disproportionately high.  He assumed he would be charged 1.5% of the balance, which he believed was the maximum allowable by California law. At all times material hereto, Plaintiff DONELL COREY KENDALL was injured as a result of Defendants' unfair competition and deceptive billing practices as described herein.

2.      Unnamed Class Plaintiffs, are, and at all times relevant herein, were residents of the State of California.  Each of these Plaintiffs were charged late fees by the Defendants in the amount of $20 for each month they were late in paying for their beverage delivery service from 2017 through the present.

### DEFENDANTS

3.      Defendant NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, is, and has been, a Delaware Corporation with its principal office or place of business in Stanford, Connecticut.  At all times relevant herein,

1 Defendants have marketed and have caused to be marketed their services, and have conducted

2 business within the jurisdiction of this Court.

3    4.    At all times material hereto, Defendants, and each of them, engaged in their

4 unfair and deceptive billing practices within the jurisdiction of this Court.

5    5.    Plaintiffs are uncertain of the true names and capacities of the Defendants sued

6 herein as DOES 1 through 20, inclusive, and therefore, sue said Defendants under said

7 fictitious names.  Plaintiffs will amend this complaint further to insert the true names and

8 capacities of said Defendants when the same are discovered.  Plaintiffs are informed and

9 believe and thereon allege that each of the fictitiously named Defendants are responsible in

10 some manner for the occurrences herein alleged and are liable to the named Plaintiffs, and all

11 other similarly situated on the claims hereinafter set forth.  Said named Defendants and

12 fictitiously named Defendants are hereinafter collectively referred to as "Defendants."

13    6.    At all times mentioned, all Defendants and each of them, were agents and/or

14 employees of all other Defendants, and in doing the things hereinafter mentioned were acting

15 within the course and scope of their authority as such agents and with the consent and

16 ratification of all other Defendants.

17                         **<u>JURISDICTION AND VENUE</u>**

18    7.    This Court has original jurisdiction of this Action pursuant to the Class Action

19 Fairness Act, 28 *United States Code* § 1332(d)(2)(A).  The matter in controversy, exclusive

20 of interest, costs and fees, exceeds the sum or value of $5,000,000, and is a class action in

21 which at least one of the members of the proposed Class has a different citizenship from

22 Defendant NESTLE.

23    8.    The Central District of California has personal jurisdiction over NESTLE

24 because NESTLE WATERS NORTH AMERICA INC. is a corporation or other business

25 entity authorized to conduct, and does conduct business in the State of California.  NESTLE

26 WATERS NORTH AMERICA INC. is registered with the California Secretary of State to

27 do sufficient business with sufficient minimum contacts in California, and/or otherwise

28

*PLAINTIFFS' FIRST AMENDED COMPLAINT
[CLASS ACTION]*

1  intentionally avails itself of the California market through its promotion, sales, distribution
2  and marketing within the State to render the exercise of jurisdiction by this Court permissible.
3      9.    Venue is proper in this Court under 28 *U.S.C.* § 1391(b)(2) because a substantial
4  part of the events giving rise to Plaintiff's claims occurred in this judicial district.

5                              **GENERAL ALLEGATIONS**

6      10.   Defendants are providers of bottled water and other beverages to consumers.
7      11.   Plaintiffs, on behalf of themselves and the Class they seek to represent, allege
8  on information and belief, that Defendants and each of them at all times relevant herein,
9  charged their customers exorbitant late fees without notice to their customers and in violation
10 of California's Unfair Competition Laws, Consumer Legal Remedies Act and common law.
11     12.   At the time a payment was deemed "late" by Defendants (which on the invoices
12 was only 20 days), Plaintiffs and other customers were charged exorbitant and
13 disproportionately high late fees for which they had not been provided adequate notice.
14     13.   Defendants knew that their late fees were unlawful under California law.
15     14.   Defendants fraudulently concealed from, and intentionally failed to disclose to
16 Plaintiff and other members of the Class the fact that the late fee was being charged 10 days
17 early, and was in excess of the maximum amount allowable under California law.
18     15.   Plaintiffs relied on the fact that any late fees they would be required to pay would
19 only be assessed if they did not pay within 30 days, and would not be in excess of the
20 maximum amount allowable under California law.  Plaintiffs would not have entered into
21 such contracts but for the deceptive marketing by Defendants.  Furthermore, these contracts
22 were contracts of adhesion, in that Plaintiffs would not be able to purchase water delivery
23 from the Defendants unless they agreed to NESTLE's terms and conditions, including the
24 late fee charges.
25     16.   Defendants intentionally failed to disclose material facts regarding the truth
26 about the late fees in order to entice Plaintiffs into entering their contracts for water delivery.
27     17.   Plaintiffs have suffered harm as a result of paying such excessive late fees.
28

*PLAINTIFFS' FIRST AMENDED COMPLAINT*
*[CLASS ACTION]*

**CLASS ACTION ALLEGATIONS**

18.   As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

19.   The "Class" is defined as all persons or entities who, within the State of California, from 2017 through the present (the "Class Period"), subscribed to water delivery services from NESTLE WATERS NORTH AMERICA, INC., DOING BUSINESS AS READY REFRESH, BY NESTLE, and were charged a flat late fee rather than 1.5% of their balance.  Excluded from the Class are NESTLE's officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of NESTLE.  Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**A.    Commonality**

20.   There are questions of law and fact that are common to the claims of Plaintiffs. Among these common questions are the following:

(a) Whether Defendants violated California's Unfair Competition Law in charging excessive late fees without providing adequate notice of the same;

(b) Whether Defendants violated California's Consumer Legal Remedies Act by charging excessive late fees without providing adequate notice of the same;

(c) Whether Defendants' conduct was unfair under the UCL in charging its customers excessive late fees without providing adequate notice of the same;

(d) Whether Defendants' conduct was misleading under the UCL;

*PLAINTIFFS' FIRST AMENDED COMPLAINT*
*[CLASS ACTION]*

(e)  Whether Defendants' practices and representations made in connection with the customer agreement terms pertaining to the late fees were false and/or misleading;

(f)  Whether Defendants' conduct as set forth above injured consumers, and if so, the extent of the injury; and

(g)  Whether Defendants' conduct constitutes imposition of an illicit penalty in charging excessive late fees in violation of *Civil Code* section 1671.

**B.    Numerosity**

21.    The members of the Class are so numerous that separate joinder of each member is impracticable.  Plaintiffs are informed and believe that in the County of Los Angeles alone, the members of the Class would easily exceed the minimum numbers to satisfy this requirement.

**C.    Typicality**

22.    Plaintiffs' claims are typical of the claims of the Class in that they are claiming Defendants charged them excessive late fees without notice to them.

23.    The core issues which predominate over all the other issues in the litigation involve Defendants' unfair competition, violation of the CLRA and other violations, as discussed above, specifically with respect to the excessive charging of late fees without notice to the customers.

24.    Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D.    Adequacy of Representation**

25.    Plaintiff KENDALL will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action.  He has retained competent counsel, experienced in litigation of this nature, to represent him and members of the Class. There is no hostility between Plaintiff and the unnamed Class members.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

*PLAINTIFFS' FIRST AMENDED COMPLAINT
[CLASS ACTION]*

1    26.    To prosecute this case, Plaintiff KENDALL has chosen the law firms of Beverly

2    Hills Trial Attorneys, P.C. and the Law Office of Alexis Djivre, who have represented

3    Plaintiffs in class actions and as private attorneys general in bringing public interest actions.

4    **E.    Superiority**

5    27.    The questions of law or fact common to the claims of Plaintiffs and of each Class

6    member predominate over any questions of law or fact affecting only individual members of

7    the Class.  All claims by named Plaintiffs and unnamed Class members are based on the same

8    alleged "across the board" representations by Defendants and other acts constituting

9    negligence, unfair competition under the UCL, violation of Consumer Legal Remedies Act

10   and imposition of unfair and illicit penalties.

11   28.    Common issues predominate when as here, liability can be determined on a

12   class-wide basis, even when there are some individualized damages.

13   29.    As a result, when determining whether common questions predominate, courts

14   focus on the liability issue and if the liability issue is common to the class as in the case at

15   bar, common questions are held to predominate over individual questions.

16   30.    Since all claims by named Plaintiffs and unnamed Class members are based on

17   the same alleged "across the board" failures by Defendants and other unfair competition

18   under the UCL, the predominance requirement needed for class action treatment is satisfied.

19   31.    A class action is superior to thousands of individual actions in part because of

20   the non-exhaustive factors listed below:

21   (a) Joinder of all class members would create extreme hardship and

22   inconvenience for the affected consumers because of their immense geographical dispersion.

23   (b) It is highly unlikely that individual Plaintiffs would shoulder the burden of

24   this vast and complex litigation as many are simply too poor or uneducated about Defendants'

25   actions to bring separate actions;

26   (c) The interests of justice will be well served by resolving the common

27   disputes of potential class members in one forum;

28

-10-

1          (d) Individual suits would not be cost effective.    The costs to individual

2    Plaintiffs in a collective action are lowered through the pooling or resources and by limiting

3    the controversy to one proceeding which efficiently resolves common issues of law and fact

4    that arose from the same alleged activity; and

5          (e) The action is manageable as a class action; individual lawsuits are not

6    economically maintainable as individual actions.

7        32.    Defendants have also acted or refused to act on grounds generally applicable to

8    the Class, thereby making appropriate final declaratory relief with respect to the Class as a

9    whole.

10    **FIRST CAUSE OF ACTION**

11    **(For Injunctive Relief and Restitution Against All Defendants**
**Under *Business and Professions Code* sections 17200, *et seq*.)**

12

13        33.    Plaintiffs reallege and incorporate here by reference each of the foregoing

14    paragraphs, and further allege as follows.

15        34.    Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this

16    first cause of action on behalf of themselves and as a private attorneys general.

17        35.    *Business and Professions Code* section 17200, *et seq*., also known as the Unfair

18    Competition Law, defines "unfair business competition" to include any "unlawful, unfair or

19    fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading"

20    advertising.  The Unfair Competition Law imposes strict liability.  Plaintiffs need not prove

21    that Defendants intentionally or negligently engaged in unlawful, unfair or fraudulent

22    business practices – but only that such practices occurred.

23    ***"Unfair" Prong***

24        36.    A business act or practice is "unfair" under the UCL if it offends an established

25    public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to

26    consumers, and that unfairness is determined by weighing the reasons, justifications and

27    motives of the practice against the gravity of the harm to the alleged victims.

28

-11-

37.    Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants engaged in a misleading and deceptive late fee penalty.  In early 2018 (and possibly as early as January 2017), that charge was described as "the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the invoice date until paid."  However, the terms also stated that "[i]f the late fee exceeds the maximum rate allowed by applicable law, the late charge will be equal to such maximum rate."  Article XV, Section 1 of the *Constitution of the State of California* ("the Usury Law") provides a maximum range of interest rates that may be charged (7 – 10% per annum) on loans.  California *Civil Code* section 1916 sets the interest on a loan or forbearance of money, goods or things at 12% per annum. Typically, because there are no limits on finance charges for the purchase of personal, family and household goods or services in California, the maximum rate of 18% per annum, or 1.5% per month, is used in contracts for such items.

38.    When drafting their late payment terms, NESTLE did not pick 1.5% out of thin air.  California has unofficially adopted that number as the maximum rate allowed for a late fee on contracts for the purchase of household goods and services.  NESTLE knew this, and that is precisely why this specific number was included in the terms and conditions of NESTLE's beverage delivery offers.

39.    In most cases, with respect to Plaintiff DONELL COREY KENDALL, the late fee of $20 assessed for each invoice was in excess of 70% of the underlying beverage charge.

40.    Furthermore, the terms and conditions of NESTLE's beverage delivery services imply that the fee may be based on "any" charge – including, but not limited to, the beverages themselves, the bottle fees, the delivery fees and taxes.  It is unclear how the determination is made.

41.    Additionally, although the terms state that the customer has 30 days from the invoice date to pay, however, NESTLE's "pay by" date is only 20 days from the billing date.  This is misleading and confusing.  These acts and practices offend an established public policy of transparency in pricing, and are immoral, unethical, oppressive and unscrupulous, which are substantially injurious to consumers.

*PLAINTIFFS' FIRST AMENDED COMPLAINT*
*[CLASS ACTION]*

42.   The harm to Plaintiff DONELL COREY KENDALL and Class members outweighs the utility of Defendants' practices.  There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

43.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

44.   Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiff, and are highly likely to deceive and have deceived members of the consuming public.  When Plaintiff DONELL COREY KENDALL realized he was being charged a disproportionate late fee, he contacted NESTLE's customer service line.  He made calls multiple times over a period of several years.[4]  On each occasion, Plaintiff KENDALL questioned why the late fee was nearly as much as the monthly water charges.  And on each of those occasions, NESTLE's customer service representative was unable to answer his question, apologized for the charge, and reversed the fee.  This led Plaintiff to believe that flat fees were erroneous, for if the fee were legitimate, NESTLE would not reverse the charge each time he called.

45.   Plaintiff further relied on Defendants' fraudulent and deceptive representations regarding their late fees – specifically that he would be charged 1.5%, which was the maximum allowed by law.  This was confirmed when he saw the online offer from Ready Refresh in early 2018, which specified that if "the late fee or interest rate exceeds the maximum rate allowed by law, the late charge would be "…the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the "pay by" date until paid. **If the late fee or interest rate exceeds the maximum rate allowed by law, the late charge will be equal to such maximum rate will be equal to such maximum**

---

[4] Plaintiff does not have the exact dates on which he called NESTLE's customer service number; however, he has invoices showing that late fees were reversed on 7/29/15, 8/29/16 and 6/27/17 (approximately 8 late fees were reversed on these dates).  He is missing several invoices for the four-year period, which might document additional reversed fees.

**rate**."  This term was misleading because of the fact that NESTLE specifically chose an interest rate of 1.5% per month (or 18% per annum), which has been considered the maximum rate allowed by law in California.  These misrepresentations played a substantial role in Plaintiff's decision to enter into an agreement with Defendants for beverage delivery, and Plaintiff would not have purchased their products without these misrepresentations.

***"Unlawful" Prong***

46.  A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

47.  As detailed in Plaintiff's Second Cause of Action below, the Consumer Legal Remedies Act, California *Civil Code* sections 1750 - 1784, prohibits a business from engaging in sales practices that are deceptive or misrepresentations when offering goods and services to the general public.

48.  Defendants' retention of funds from Plaintiff and others as a result of their wrongful activities amounts to conversion under *Civil Code* section 3336.

49.  Plaintiffs allege that the practice of Defendants is an unfair business practice under section 17200 of the *Business and Professions Code*, entitling them and others to restitution, and further that such practice should be enjoined.

50.  Such illegal conduct also constitutes an unfair business practice under section 17200.

51.  Plaintiffs allege, on information and belief, that Defendants' unfair practices should be temporarily and permanently enjoined.

52.  Plaintiffs further allege that the actions conducted by the Defendants are, and continue to be, a deliberate and intentional attempt by Defendants to "fleece the consumer" in violation of law, and is of such a fraudulent and malicious nature as described in section 3294 of the California *Civil Code* so as to entitle the Plaintiffs to punitive damages.

53.  Besides being unlawful, Defendants' conduct alleged herein is "unfair" within the meaning of section 17200 inasmuch as such conduct offends public policy in this State, has no utility or rational justification and is substantially injurious to the general public.

*PLAINTIFFS' FIRST AMENDED COMPLAINT*
*[CLASS ACTION]*

54.    Besides being unlawful and unfair, Defendants' conduct alleged herein is also "fraudulent" and/or "misleading" within the meaning of *Business & Professions Code* section 17200 inasmuch as such conduct is likely to deceive members of the general public.

55.    On information and belief, Defendants have received unearned commercial benefits, at the expense of their competitors and the general public, as a result of their employment of unlawful, and/or unfair and/or fraudulent and/or misleading business practices, including charging excessive late fees without advance notice to their customers.

56.    Defendants' unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendants' competitors.    The amounts charged by Defendants for late fees are unlawful in that the amount is an improper attempt to state liquidated damages such that the amount operates as a penalty in violation of California law.

57.    In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff s also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

## SECOND CAUSE OF ACTION

### (For Injunctive Relief Against All Defendants Under California *Civil Code* section 1750, *et seq*.)

58.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

59.    Defendants are "persons" as defined by *Civil Code* section 1761(c).

60.    Plaintiff and each member of the Class are "consumers" within the meaning of *Civil Code* section 1761(d).

61.    The Consumers Legal Remedies Act applies to Defendants' conduct because it extends to transactions that are intended to, or result in the sale or lease of goods or services

*PLAINTIFFS' FIRST AMENDED COMPLAINT*
*[CLASS ACTION]*

to consumers. Defendants sold goods to the Plaintiffs (bottled beverages), and the delivery of that water and other beverages constitutes "services" under the CLRA.

62.    Defendants violated and continue to violate the CLRA by engaging in the following practices prescribed by *Civil Code* section 1770(a) in transactions with the members of the Class which were intended to result in, and did result in, payment of excess amounts for late fees for late subscription payments.

63.    In violation of *Civil Code* section 1770(a)(19), Defendants inserted an unconscionable provision in the contract, assessing excess penalty fees for late payments and charging late fees before payments were actually due.

64.    Defendants have failed to disclose material facts to the Class members by continuing to charge them untimely and excessive late fees, and by failing to disclose their illegal conduct in not crediting the late fees they illegally collected from their customers. Defendants had a duty to disclose the omitted facts because: 1) they had exclusive knowledge of material facts not known to Class members and which could not be discerned from review of Defendants' contracts and agreements; 2) because they actively concealed material facts; and 3) because they made partial representations, including those discussed above, while suppressing true material facts.  The facts that Defendants misrepresented and concealed as alleged in the preceding paragraphs were material to the decisions Plaintiffs made in entering contracts with the Defendants, and their failure to complain about the excessive late fees they were charged by Defendants.  Defendants are liable under the CLRA for these material omissions.

65.    Pursuant to *Civil Code* section 1782(d), the Class seeks a court order enjoining the above-described wrongful acts and practices of Defendants.

66.    Pursuant to *Civil Code* section 1782, Plaintiffs notified Defendants in writing by certified mail of the particular violations of Civil Code section 1770 and the other violations as alleged herein and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

-16-

**THIRD CAUSE OF ACTION**

**(For Breach of The Implied Covenant of Good Faith and Fair Dealing
Against All Defendants)**

67.   Plaintiffs hereby incorporate all paragraphs above as though fully set forth herein.

68.   In all contracts, including the written contracts between the Plaintiffs and Defendants, there is an implied covenant of good faith and fair dealing requiring the parties to deal fairly with each other in all respects in connection with the contracts and not to take any action which deprives the other of the benefits of the contracts to any extent.

69.   In each of the contracts between Plaintiffs and Defendants, the covenants of good faith and fair dealing include obligations on the part of Defendants to charge and collect only fair and equitable late fees, and not more.  Defendants breached the covenants of good faith and fair dealing in each of the contracts by charging untimely and excessive late fees without notice to their consumers.

70.   As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in amounts to be proven at trial, and continue to be damaged.

**FOURTH CAUSE OF ACTION**

**(For Imposition of Unlawful Penalties in Violation of California
*Civil Code* section 1671 Against All Defendants)**

71.   Plaintiffs incorporate all paragraphs above as though fully set forth herein.

72.   Defendants' late fee policy and practices, as set forth herein, violate *Civil Code* section 1671 in that they are unreasonable under the circumstances existing at the time the contracts were made.  In particular, the following policies and actions violate *Civil Code* section 1671:

(a)  Defendants' contract constitutes a contract of adhesion that does not afford customers any control over its terms, including the terms setting forth Defendants' late fee policy;

1  (b)  The provisions of the contract pertaining to the imposition of late fees for

2  untimely payment are unreasonably vague and ambiguous in that the description of the late

3  fee charge is confusing, and as to what the maximum rate a customer would be charged if

4  he/she were late in making a payment.  It is unclear as to what the "greater" amount between

5  the flat fee and the 1.5% interest rate is.  Furthermore, Defendants violate their own provision

6  in the contract which states that the customer has 30 days to pay from the billing date, when

7  in actuality, the invoice only provides 20 days to pay; and

8  (c)  Defendants' late fee policy and practice cause customers to incur excessive

9  penalties that bear no relation to the damages Defendants actually incur as a result of the

10  untimely payments.

11  73.  As a direct result of Defendants' late fee policy and practice, Plaintiffs were

12  forced to incur excessive and unreasonable penalties.  Plaintiffs suffered injury in fact in the

13  form of lost money and/or property as a result of paying the excessive and unreasonable late

14  fees billed and automatically charged by Defendants.

15

16  **PRAYER FOR RELIEF**

17  Plaintiff, DONELL COREY KENDALL, individually and on behalf of all others

18  similarly situated, prays for relief and judgment against Defendants as follows:

19  1.  An order certifying the Class and designating DONELL COREY KENDALL

20  as Class Representative and his counsel as Class Counsel;

21  2.  Awarding Plaintiff and the proposed Class members damages

22  according to proof;

23  3.  Awarding restitution and disgorgement of all profits and unjust enrichment that

24  Defendants obtained from Plaintiff and the Class members as a result of their unlawful, unfair

25  and fraudulent business practices described herein;

26  4.  Awarding declaratory and injunctive relief as permitting by law or

27  equity to individual Plaintiffs, including enjoining Defendants from continuing the

28  unlawful practices set forth herein, and directing Defendants to identify, with Court

1    supervision, victims of their misconduct and pay them all money they are required to pay;

2        5.      Awarding attorneys' fees and costs; and

3        6.      Providing such further relief as may be just and proper.

4

5

6    Dated:  April 23, 2021                    **BEVERLY HILLS TRIAL LAWYERS, P.C.**

7

8                                            /s/ *Azar Mouzari*
                                              Azar Mouzari
9                                            Attorneys for Plaintiffs

10

11   Dated:  April 23, 2021                    **LAW OFFICE OF ALEXIS DJIVRE**

12

13                                           /s/ *Alexis Djivre*
                                              Alexis Djivre
14                                           Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PLAINTIFFS' FIRST AMENDED COMPLAINT*
*[CLASS ACTION]*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court Central District of California by using the CM/ECF system on April 23, 2021.

I further certify that all participants in the case appear to have been registered CM/ECF users and that service should therefore be accomplished by the CM/ECF system via electronically mail to all counsel of record.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 23, 2021, in Los Angeles, California.

                                        */s/ Alexis Djivre*
                                        Alexis Djivre

*PLAINTIFFS' FIRST AMENDED COMPLAINT [CLASS ACTION]*