Azar Mouzari, SBN 263461
Nilofar Nouri, SBN 311871
BEVERLY HILLS TRIAL ATTORNEYS, P.C.
468 N. Camden Drive, Suite 238
Beverly Hills, CA 90210
Tel: 310-858-5567
Fax: 424-286-0963
azar@bhtrialattorneys.com
nilofar@bhtrialattorneys.com

UNITED STATED DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONELL COREY KENDALL, individually, and on behalf of all others similarly situated, and MARLON JAVIER, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLUETRITON BRANDS, INC. formerly known as NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 2:20-cv-10511-CAS(Ex)<br><br>Hon. Christina A. Snyder – 8D<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES**<br><br>**[CLASS ACTION]**<br><br>**(1) VIOLATION OF BUSINESS & PROFESSIONS CODE SECTIONS 17200, ET SEQ. ("UCL")**<br><br>**(2) VIOLATION OF CIVIL CODE SECTIONS 1750, ET SEQ. ("CLRA")**<br><br>**(3) VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1671**<br><br>**[DEMAND FOR JURY TRIAL]** |

COME NOW Plaintiffs DONELL COREY KENDALL ("KENDALL") and MARLON JAVIER ("JAVIER"), individually, and on behalf of all others similarly situated (collectively "Plaintiffs"), and through their counsel of record, Beverly Hills Trial Attorneys, P.C., file this class action complaint against BLUETRITON BRANDS, INC. formerly known as NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, and DOES 1 through 20, inclusive ("Defendants" or "NESTLE"), seeking damages and relief on behalf of themselves and for all others similarly situated for violation of California's Unfair Competition Law - *Business & Professions Code* sections 17200, *et seq.* ("UCL"), California's Consumer Legal

Remedies Act - *Civil Code* sections 1750, *et seq*. ("CLRA"), and related claims as stated herein as below.  Unless explicitly stated to the contrary, all allegations are based upon information and belief.

**<u>INTRODUCTION</u>**

Scholars have noted that a scourge of contractual unfairness is plaguing today's consumer markets.[1]  Because consumers seldom read form or web-contracts, businesses are incentivized to hide unduly one-sided terms in fine print.[2]  Many consumers remain unaware that they are bound to such terms until it is too late.  For many of those who actually notice an offensive term in advance, they still have no choice but to accept it nonetheless, given that the vast majority of all consumer contracts today are offered on an adhesive, take-it-or leave-it basis.[3]  Thus, it is a fair assessment to

---

[1] Margaret Jane Radin, Boilerplate: The Fine Print, Vanishing Rights, And The Rule Of Law (2014) (discussing how firms' rampant use of boilerplate contracts oppresses consumers and undermines the rule of law through "democratic degradation"); Lucian A. Bebchuk & Richard A. Posner, One-Sided Contracts in Competitive Consumer Markets, 104 MICH. L. REV. 827 (2006) (suggesting that, due to reputational concerns, firms avoid universally enforcing one-sided contract terms in favor of more selective enforcement to deter consumer opportunism).

[2] Ian Ayres & Alan Schwartz, The No-Reading Problem in Consumer Contract Law, 66 STAN. L. REV. 545 (2014); James Gibson, Vertical Boilerplate, 70 WASH. & LEE L. REV. 161, 164 (2013) (purchasing four standard laptops as an experiment and finding that each laptop was governed by an average of twenty-five separate contracts comprising an average of 71,828 words—about the length of the first Harry Potter novel—with "nine out of every ten of those boilerplate terms arriv[ing] late in the transaction, long after the seller had been paid"); Florencia Marotta-Wurgler et al., Does Anyone Read the Fine Print? Consumer Attention to Standard-Form Contracts, 43 J. LEG. STUD. 1, 2 (2014) (conducting an empirical study to find that "only one or two in 1,000 shoppers access a product's EULA [End User License Agreement] for at least 1 second," and concluding that this informed minority is insufficient to police against one-sided contract terms); Aleecia M. McDonald & Lorrie Faith Cranor, The Cost of Reading Privacy Policies, 4 I/S J. L. & Pol'y 543, 553–65 (2008) (finding that it would cost the average American about 244 hours annually—or thirty full eight-hour working days—to fully read the online privacy terms to which they are bound); Jonathan A. Obar & Anne Oeldorf-Hirsch, The Biggest Lie on the Internet: Ignoring the Privacy Policies and Terms of Service Policies of Social Networking Services, INFO., COMM. & SOC'Y (2018) (describing an empirical study in which 93% of consumers agreed to a contract without noticing a "child assignment clause" that would have provided the consumer's first-born child as payment).

[3] Slawson, Standard Form Contracts and Democratic Control of Lawmaking Power, 84 HARV. L. REV. 529, 529 (1971) ("Standard form contracts probably account for more than ninety-nine percent of all the contracts now made."); Arthur Allen Leff, Contract As Thing, 19 AMER. UNIV. L. REV. 131, 142 (1970).

*PLAINTIFFS' THIRD AMENDED COMPLAINT*
*[CLASS ACTION]*

say that participation in the modern economy requires consumers to capitulate as businesses have weaponized fine print and legislated by contract.[4]

Because factors such as asymmetric information and inflated transaction costs create market failures, consumer protection laws become important to protect disadvantaged parties.[5]  With these laws, consumers are equipped with an arsenal of effective remedies to deter and rectify unconscionable contractual overreach, consistent with the universal maxim that "[f]or every wrong there is a remedy."  Cal. Civ. Code § 3523 (2019).  Remedies breathe life and meaning into otherwise abstract and unrealized rights.  By providing a vehicle through which consumers may vindicate their substantive rights, remedies form a foundational element of the rule of law.[6]

This is one such case, whereby Plaintiffs, on behalf of themselves and of all others similarly situated, seek legal redress under California consumer protection laws, including California's Unfair Competition Law, Business and Professions Code, California's Consumers Legal Remedies Act and California Civil Code.  The facts of the case are as follows.

Defendants BLUETRITON BRANDS, INC. formerly known as NESTLE WATERS

---

[4] *See, e.g., Fed. Trade Comm'n v. AMG Services, Inc.*, 29 F. Supp. 3d 1338, 1351 (D. Nev. 2014) ("[T]he material terms in the fine print are . . . hidden from borrowers. These terms, which significantly alter the parties' legal obligations from what is implied . . . are concealed from borrowers because they are scattered throughout the fine print. . . . This structure gives the impression that a $300.00 loan from the Lending Defendants will only cost borrowers $90.00, when in fact, unless borrowers read the fine print and take the necessary steps to opt out of the renewal plan, such a loan will incur $675.00 in fees."); *see also* David Cay Johnston, The Fine Print: How Companies Use "Plain English" To Rob You Blind (2014); NAT'L ECON. COUNCIL, THE COMPETITION INITIATIVE AND HIDDEN FEES 7–15, 9 (Dec. 2016); Larry Bates, Administrative Regulation of Terms in Form Contracts: A Comparative Analysis of Consumer Protection, 16 EMORY INT'L L. REV. 1, 1–2 (2002) ("[W]hen the law enforces the terms of the contract supplied by the seller, in effect it is allowing the seller to reshape the law to its advantage but without the popular participation we normally associate with legislation in a liberal state.").

[5] Jeff Sovern, Toward a New Model of Consumer Protection: The Problem of Inflated Transaction Costs, 47 WM. &MARY L.REV. 1635 (2006) ("Contrary to the predictions of conventional economic theory, firms often benefit by increasing consumer transaction costs. Firms do so by. . .obscuring contract terms in a variety of ways . . . [and] by taking advantage of predictable consumer behaviors. . . ."); Oren BarGill, The Behavioral Economics of Consumer Contracts, 92 MINN. L. REV. 749, 750 (2008) ("[I]n certain markets, consumer mistakes and sellers' strategic response to these mistakes are responsible for a substantial welfare loss, potentially justifying legal intervention.")

[6] Erin Delaney,'Right to an Effective Remedy': Judicial Protection and European Citizenship (2004) (Federal Trust Constitutional Online Paper Series No. 17/04), ("The right to an effective remedy has long been considered a fundamental right of a society based on the rule of law. Blackstone described the right to an effective remedy as a subordinate' right, 'through which people vindicated their absolute rights.' Inexorably linked to the right to an effective remedy is, therefore, the corresponding right to judicial access.")

NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE and DOES 1 through 20, inclusive, are a retail beverage delivery service that provides bottled water and other beverages to customers' homes and offices on a monthly subscription basis.  Plaintiffs DONELL COREY KENDALL and MARLON JAVIER, and others similarly situated, purchased water and other beverages from the Defendants pursuant to contract.  Because Plaintiffs signed up for their beverage delivery either online or on the telephone, they never received formal written contracts from Defendants.

Plaintiff KENDALL signed up for recurring delivery of bottled water from NESTLE at least as of 2015.

During the summer of 2015, Plaintiff KENDALL realized he was being assessed a flat fee of $15 for making late payments on beverage delivery.[7]  When he signed up for the service, he was told that he had 30 days to pay his bill.  In actuality, he later found out through actual invoices that the billing date was only 20 days from the "pay by" date.  Because his monthly bills were usually only $30 or so, Plaintiff could not understand why he was being charged 50% or more of that amount for a late fee, and why this late fee was assessed a mere 20 days from the "pay by" date.[8]  Accordingly, he called NESTLE's customer service to complain about the charge.  The customer service representative apologized and reversed the fee.  Over the course of approximately three years, Plaintiff KENDALL had contacted NESTLE's customer service numerous times to complain about the excessive late fee.  On each occasion, the representative would apologize and reverse the charge.  It was Plaintiff KENDALL's understanding that NESTLE would not have reversed the charges consistently and without exception each and every time he took time to contact NESTLE's customer service department unless NESTLE was aware that the late fee was excessive, unfair and/or vague as per the terms of the subscription agreement.  Plaintiff KENDALL was informed on each occasion he contacted NESTLE's customer service department that the late fee would be reversed.  Based on these interactions and NESTLE's own continuous conduct, Plaintiff KENDALL believed that the late fee was assessed by mistake given that it represented more than 50% of his monthly bill.

In approximately early 2018, Plaintiff KENDALL saw an online offer on Defendants' website, which detailed the terms and conditions of their beverage service by recurring delivery. (See

---

[7] That late fee increased 25% to $20 at the beginning of 2017.

[8] Sparkletts, the only other major water delivery service in Southern California, charges a flat late fee of $10 after 60 days.

Exhibit "1".) [9]  Although he was aware of the late fee, and had been assessed and paid late fees over the years, it was the first time he read the specifics of the late fee provision.  The terms were contained in Paragraph 7 of the offer.  In approximately 6.5-point Arial font, the term stated, "If Customer does not pay any charge **within thirty (30) days of the invoice date**, Customer will pay Company **the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the invoice date until paid. If the late fee or interest rate exceeds the maximum rate allowed by law, the late charge will be equal to such maximum rate.**"  Defendants always charged Plaintiff KENDALL the $20 fee (previously $15), even though that fee was unconscionable, excessive, unreasonable and unfair.  The late fee was neither a fair nor reasonable measure or approximation of any damage Defendants sustained as a direct result of the late payment. The late fee assessed against Plaintiff KENDALL was always a fixed amount and not, in any way, proportional to the original underlying invoice.  Also, the due date for payment of the invoice was always 20 days, not 30 days from the invoice date.

Defendants' acts of imposing these excessive late fees and assessing them before 30 days are unconscionable, void and unenforceable under California law.  Specifically, the late fees and early assessment constitute unlawful penalties that are void and unenforceable under California Civil Code § 1671; unlawful and unfair under California's Unfair Competition Law, Bus. & Prof. Code§ 17200 *et seq.* (the "UCL"); and unconscionable under California Civil Code § 1750 *et seq.*, the Consumers Legal Remedies Act (the "CLRA").

Reading the 2018 terms online, KENDALL believed that he would be charged a late fee that would be both proportional with his underlying balance and reasonable given the circumstances, especially when his monthly balance (without the inclusion of late fees) was generally around $30. Considering these facts, KENDALL alleges that the late fee was not, in any way, proportional to the original underlying invoice and excessive, unconscionable, void and unenforceable under California

---

[9] Exhibit "1" is a copy of the offer that was advertised on Defendants' website in early 2018, which Plaintiffs believe to be similar, if not identical, to the terms and conditions of the "contract" Plaintiff KENDALL entered into at least as of 2015, with the exception that the late fee was $15.  The $20 late fee, instituted in early 2017 still exists, and is listed on the Terms and Conditions section (See Exhibit "2") of the ReadyRefresh Water & Beverage Delivery website at:
https://www.readyrefresh.com/en/terms?gclid=Cj0KCQjw9b_4BRCMARIsADMUIyoVa6ZmNj95gNJc8fbyNLqeIKedINH4GfCGqjX0hhUJQNyhB_pw1MIaAvG1EALw_wcB&gclsrc=aw.ds   Notably, the new terms no longer state that the alternate fee could be interest of 1.5% per month.

*PLAINTIFFS' THIRD AMENDED COMPLAINT*
*[CLASS ACTION]*

law.  The fixed amount Defendants assess as a late fee unfairly and unproportionally punishes consumers who place smaller orders of water bottles.  The underlying balance is not adequately and properly considered by Defendants when assessing a late fee.  The confusing nature of the terms led KENDALL to believe that he would be charged a late fee that would be both proportional with his underlying balance and reasonable given the circumstances.  Further, Plaintiff KENDALL believed that he would only be assessed a late fee after being more than 30 days late in remitting the payment.

Plaintiff JAVIER purchased water from the Defendants, and each of them, from at least 2020 to the present.

When KENDALL and JAVIER entered into an agreement to purchase water delivery services from the Defendants, they were aware of the existence of the late fee policy.  However, they assumed they would be charged an amount proportionate to the charge for the water.

In fact, the flat fee of $20 was often in excess of seventy percent (70%) per month of the actual cost of the beverage service.  Plaintiffs assert that California law disfavors service charges, late fees and finance charges which are unreasonable and punitive in nature.  Defendants consistently charged Plaintiffs late fees substantially in excess of an amount which is reasonable, and which was not measured to account for Defendant's associated costs but rather to punish consumers who place smaller order and who have financial difficulties. Further, the assessment of the late fee after only 20 days, and not after 30 days as specified in the written terms and conditions, is also unlawful, unfair and punitive in nature.

Plaintiffs allege that the late fees Defendants assess generate substantial revenues and profits for Defendants. If and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees (e.g., being late to make a payment), it is neither impracticable nor extremely difficult to fix the actual damage.  Furthermore, if and to the extent that Defendants suffer, would suffer, or have suffered any damage upon the condition that triggers the late fees, the late fees are not a reasonable measure or approximation of such damages and do not provide fair average compensation therefor. Moreover, they are unreasonable, excessive and punitive in nature. On information and belief, Defendants did not conduct a reasonable endeavor to fix fair average compensation for losses, if any, that they incur, would incur or have incurred by virtue of any of the conditions that trigger the imposition of the late fees.

Further, if and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees (e.g., being late to make a

*PLAINTIFFS' THIRD AMENDED COMPLAINT*
*[CLASS ACTION]*

payment), it should always be proportional to the unpaid balance.  On information and belief, Defendants did not conduct a reasonable endeavor to determine how the loss, if any, is reflected in proportion to a given underlying balance. If and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees, it is neither impracticable nor extremely difficult to fix the actual damage and compute it as a proportion of the remaining unpaid balance.

Plaintiffs DONELL COREY KENDALL and MARLON JAVIER bring this action on behalf of themselves and other similarly situated Class members pursuant to *Rule* 23(a), (b)(1) and (b)(3) of the *Federal Rules of Civil Procedure*, and seek certification for the Class of consumers who have entered into "contracts" with Defendants for the delivery of bottled water and other beverages, and were charged late fees that were unreasonably and unfairly excessive, in order to obtain redress for those who have paid those unlawful fees.  Plaintiffs seek to obtain damages, restitution, and other appropriate relief in the amount by which Defendants were unjustly enriched as a result of its deceptive and unlawful practices.  Finally, Plaintiffs seek reasonable attorneys' fees pursuant to California *Code of Civil Procedure* section 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest, and satisfies statutory requirements for an award of attorneys' fees.

## PARTIES

## PLAINTIFFS

1. Plaintiff DONELL COREY KENDALL, is, and at all times relevant herein, was a resident of the City and County of Los Angeles, State of California.  Plaintiff KENDALL purchased water from the Defendants, and each of them, from at least as of 2015 to approximately late 2018.

2. Plaintiff MARLON JAVIER, is, and at all times relevant herein, was a resident of the City and County of Los Angeles, State of California.  Plaintiff JAVIER purchased water from the Defendants, and each of them, from at least 2020 to the present.

3. Over the course of this time, there were months wherein which Defendant BLUETRITON BRANDS, INC. formerly known as NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE charged Plaintiffs late fees for each monthly bill that they failed to pay by the "pay by" date.  From at least as of 2015 to the end of 2016, the fee was $15.  Then, at the beginning of 2017, the late fee went up 25% to $20.  When Plaintiffs entered into an agreement to purchase water delivery services from the Defendants, it was their understanding that they had 30 days to pay the bill.  In actuality, the "pay by" date was only 20 days from the

*PLAINTIFFS' THIRD AMENDED COMPLAINT*
*[CLASS ACTION]*

"billing date." Additionally, Plaintiffs were unaware that the late fee would always be the flat fee, which was disproportionately high. Plaintiffs believed that they would be charged a late fee that would be both proportional with their underlying balance and reasonable given the circumstances. At all times material hereto, Plaintiffs DONELL COREY KENDALL and MARLON JAVIER were injured as a result of Defendants' unfair competition and deceptive billing practices as described herein.

4.     Unnamed Class Plaintiffs, are, and at all times relevant herein, were residents of the State of California. Each of these Plaintiffs was charged late fees by the Defendants in the amount of $20 for each month they were late in paying for their beverage delivery service from 2017 through the present.

**DEFENDANTS**

5.     Defendant BLUETRITON BRANDS, INC. formerly known as NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE is, and has been, a Delaware Corporation with its principal office or place of business in Stanford, Connecticut. At all times relevant herein, Defendants have marketed and have caused to be marketed their services, and have conducted business within the jurisdiction of this Court.

6.     At all times material hereto, Defendants, and each of them, engaged in their unfair and deceptive billing practices within the jurisdiction of this Court.

7.     Plaintiffs are uncertain of the true names and capacities of the Defendants sued herein as DOES 1 through 20, inclusive, and therefore, sue said Defendants under said fictitious names. Plaintiffs will amend this complaint further to insert the true names and capacities of said Defendants when the same are discovered. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged and are liable to the named Plaintiffs, and all other similarly situated on the claims hereinafter set forth. Said named Defendants and fictitiously named Defendants are hereinafter collectively referred to as "Defendants."

8.     At all times mentioned, all Defendants and each of them, were agents and/or employees of all other Defendants, and in doing the things hereinafter mentioned were acting within the course and scope of their authority as such agents and with the consent and ratification of all other Defendants.

//

//

**JURISDICTION AND VENUE**

9.    This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 *United States Code* § 1332(d)(2)(A).  The matter in controversy, exclusive of interest, costs and fees, exceeds the sum or value of $5,000,000, and is a class action in which at least one of the members of the proposed Class has a different citizenship from Defendant NESTLE.

10.    The Central District of California has personal jurisdiction over NESTLE because BLUETRITON BRANDS, INC. formerly known as NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE, is a corporation or other business entity authorized to conduct, and does conduct business in the State of California.   BLUETRITON BRANDS, INC. formerly known as NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through its promotion, sales, distribution and marketing within the State to render the exercise of jurisdiction by this Court permissible.

11.    Venue is proper in this Court under 28 *U.S.C.* § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

**GENERAL ALLEGATIONS**

12.    Defendants are providers of bottled water and other beverages to consumers.

13.    Plaintiffs, on behalf of themselves and the Class they seek to represent, allege on information and belief, that Defendants and each of them at all times relevant herein, charged their customers exorbitant late fees without notice to their customers and in violation of California's Unfair Competition Laws, Consumer Legal Remedies Act and common law.

14.    At the time a payment was deemed "late" by Defendants (which on the invoices was only 20 days), Plaintiffs and other customers were charged exorbitant and disproportionately high late fees for which they had not been provided adequate notice.

15.    Defendants knew that their late fees were unlawful under California law.

16.    Defendants fraudulently concealed from, and intentionally failed to disclose to Plaintiffs and other members of the Class the fact that the late fee was being charged 10 days early. The late fee was neither a fair nor reasonable measure or approximation of any damage Defendants sustained as a direct result of the late payment.  The late fee assessed against Plaintiffs KENDALL and JAVIER was always a fixed amount and not, in any way, proportional to the original underlying invoice.  Defendants' acts of imposing these excessive late fees and assessing them before 30 days

*PLAINTIFFS' THIRD AMENDED COMPLAINT*
*[CLASS ACTION]*

are unconscionable, void and unenforceable under California law.  Specifically, the late fees and early assessment constitute unlawful penalties that are void and unenforceable under California Civil Code § 1671; unlawful and unfair under California's Unfair Competition Law, Bus. & Prof. Code§ 17200 *et seq.* (the "UCL"); and unconscionable under California Civil Code § 1750 *et seq.*, the Consumers Legal Remedies Act (the "CLRA").

17.    Considering these facts, Plaintiffs allege that the late fee was not, in any way, proportional to the original underlying invoice and excessive, unconscionable, void and unenforceable under California law.  The fixed amount Defendants assess as a late fee unfairly and unproportionally punishes consumers who place smaller orders of water bottles.  The underlying balance is not adequately and properly considered by Defendants when assessing a late fee.  The confusing nature of the terms led Plaintiffs to believe that they would be charged a late fee that would be both proportional with their underlying balance and reasonable given the circumstances.  Further, Plaintiffs KENDALL and JAVIER believed that they would only be assessed a late fee after being more than 30 days late in remitting the payment.

18.    Plaintiffs allege that the late fees Defendants assess generate substantial revenues and profits for Defendants.  If and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees (e.g., being late to make a payment), it is neither impracticable nor extremely difficult to fix the actual damage.  Furthermore, if and to the extent that Defendants suffer, would suffer, or have suffered any damage upon the condition that triggers the late fees, the late fees are not a reasonable measure or approximation of such damages and do not provide fair average compensation therefor.  Moreover, they are unreasonable, excessive and punitive in nature. On information and belief, Defendants did not conduct a reasonable endeavor to fix fair average compensation for losses, if any, that they incur, would incur or have incurred by virtue of any of the conditions that trigger the imposition of the late fees.

19.    Further, if and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees (e.g., being late to make a payment), it should always be proportional to the unpaid balance.  On information and belief, Defendants did not conduct a reasonable endeavor to determine how the loss, if any, is reflected in proportion to a given underlying balance. If and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees, it is neither impracticable nor extremely difficult to fix the actual damage and compute it as a

proportion of the remaining unpaid balance.

20.    Plaintiffs would not have entered into such contracts but for the deceptive marketing by Defendants.  Furthermore, these contracts were contracts of adhesion, in that Plaintiffs would not be able to purchase water delivery from the Defendants unless they agreed to NESTLE's terms and conditions, including the late fee charges.

21.    Similarly, any arbitration clause included in contracts with Defendants was both procedurally and substantively unconscionable, and therefore unenforceable, given the nature of these consumer contracts of adhesion wherein the party with the superior bargaining power, i.e. Defendants, have carried out a scheme to deliberately cheat a large number of consumers. As such, any such arbitration clauses are unconscionable under California law and should not be enforced given that these contracts were contracts of adhesion, in that Plaintiffs would not have been able to purchase water, a necessity, from the Defendants unless they agreed to NESTLE's terms and conditions, including the arbitration clause.

22.    Defendants intentionally failed to disclose material facts regarding the truth about the late fees in order to entice Plaintiffs into entering their contracts for water delivery.

23.    Plaintiffs have suffered harm as a result of paying such excessive late fees.

## CLASS ACTION ALLEGATIONS

24.    As further stated herein as to the following claims, Plaintiffs bring their causes of action on behalf of themselves and all others similarly situated, and certification of this class action is appropriate under California *Code of Civil Procedure* section 382 and California *Civil Code* section 1781, because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members.

25.    The "Class" is defined as all persons or entities who, within the State of California, from 2017 through the present (the "Class Period"), subscribed to water delivery services from BLUETRITON BRANDS, INC. formerly known as NESTLE WATERS NORTH AMERICA, INC., doing business as READY REFRESH, BY NESTLE and were charged an excessive, unconscionable, void and unenforceable flat late fee. Excluded from the Class are NESTLE's officers, employees, agents or affiliates, and any judge who presides over this action, as well as past and present employees, officers and directors of NESTLE.  Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**A.    Commonality**

26.    There are questions of law and fact that are common to the claims of Plaintiffs.  Among these common questions are the following:

(a)    Whether Defendants violated California's Unfair Competition Law in charging excessive late fees without providing adequate notice of the same;

(b)    Whether Defendants violated California's Consumer Legal Remedies Act by charging excessive late fees without providing adequate notice of the same;

(c)    Whether Defendants' conduct was unfair under the UCL in charging its customers excessive late fees without providing adequate notice of the same;

(d)    Whether Defendants' conduct was misleading under the UCL;

(e)    Whether Defendants' practices and representations made in connection with the customer agreement terms pertaining to the late fees were false and/or misleading;

(f)    Whether Defendants' conduct as set forth above injured consumers, and if so, the extent of the injury; and

(g)    Whether Defendants' conduct constitutes imposition of an illicit penalty in charging excessive late fees in violation of *Civil Code* section 1671.

**B.    Numerosity**

27.    The members of the Class are so numerous that separate joinder of each member is impracticable.  Plaintiffs are informed and believe that in the County of Los Angeles alone, the members of the Class would easily exceed the minimum numbers to satisfy this requirement.

**C.    Typicality**

28.    Plaintiffs' claims are typical of the claims of the Class in that they are claiming Defendants charged them excessive late fees without notice to them.

29.    The core issues which predominate over all the other issues in the litigation involve Defendants' unfair competition, violation of the CLRA and other violations, as discussed above, specifically with respect to the excessive charging of late fees without notice to the customers.

30.    Upon information and belief, there has never been a prior lawsuit certified as a class on behalf of Plaintiffs based on the allegations in this Complaint.

**D.    Adequacy of Representation**

31.    Plaintiffs KENDALL and JAVIER will fairly and adequately protect the interests of the Class and are committed to the vigorous prosecution of this action.  They have retained competent counsel, experienced in litigation of this nature, to represent them and members of the Class.  There

is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

32.    To prosecute this case, Plaintiffs KENDALL and JAVIER have chosen the law firm of Beverly Hills Trial Attorneys, P.C., whose attorneys have represented plaintiffs in class actions and as private attorneys general in bringing public interest actions.

**E.    Superiority**

33.    The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class.  All claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" representations by Defendants and other acts constituting negligence, unfair competition under the UCL, violation of Consumer Legal Remedies Act and imposition of unfair and illicit penalties.

34.    Common issues predominate when as here, liability can be determined on a class-wide basis, even when there are some individualized damages.

35.    As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class as in the case at bar, common questions are held to predominate over individual questions.

36.    Since all claims by named Plaintiffs and unnamed Class members are based on the same alleged "across the board" failures by Defendants and other unfair competition under the UCL, the predominance requirement needed for class action treatment is satisfied.

37.    A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

(a)    Joinder of all class members would create extreme hardship and inconvenience for the affected consumers because of their immense geographical dispersion.

(b)    It is highly unlikely that individual Plaintiffs would shoulder the burden of this vast and complex litigation as many are simply too poor or uneducated about Defendants' actions to bring separate actions;

(c)    The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(d)    Individual suits would not be cost effective.  The costs to individual Plaintiffs in a collective action are lowered through the pooling or resources and by limiting the controversy to

one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity; and

       (e)  The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

38.  Defendants have also acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (For Violation of *Business and Professions Code* sections 17200, *et seq.*)

39.  Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

40.  Plaintiffs, pursuant to *Business and Professions Code* section 17204, bring this first cause of action on behalf of themselves and as a private attorneys general.

41.  *Business and Professions Code* section 17200, *et seq.*, also known as the Unfair Competition Law, defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  The Unfair Competition Law imposes strict liability.  Plaintiffs need not prove that Defendants intentionally or negligently engaged in unlawful, unfair or fraudulent business practices – but only that such practices occurred.

***"Unfair" Prong***

42.  A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.  Defendants' business practices are unfair under the UCL because Defendants have acted in a manner that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class Members.  These business practices include engaging in a misleading and deceptive late fee penalty, which is immoral, unethical and substantially injurious to Plaintiffs and the Class Members because the late fee was being charged 10 days early, and was unconscionable, excessive, unreasonable and unfair.

Defendants' said practices with respect to late fees violate the "unfair" prong of the UCL because the late fees: (1) constitute unfair and wrongful penalties inconsistent with the language and policy of Civil Code § 1671; and (2) constitute unconscionable provisions, in violation of various laws and policies recognized by the California Legislature and the California courts,

including without limitation Civil Code§ 1670.5 and the CLRA.

43.     The late fees have limited or no utility as compared with alternatives that would more fairly measure the harm (if any) incurred by Defendants upon the occurrence of the condition that triggers the late fees. The gravity of the harm that the late fees impose on students is substantial in that they exceed the actual amount of harm (if any) incurred by Defendants upon the occurrence of the condition that triggers the late fees. Through their imposition and collection of the late fees from the members of the Class, Defendants have been massively and unjustly enriched. Defendants' late fees also violate the "unfair" prong of the UCL because their inclusion in the water delivery subscription agreements, imposition and collection are and at all times relevant hereto have been oppressive, unscrupulous or substantially injurious to consumers.

44.     Defendants' said practices with respect to the late fees also violate the "unfair" prong of the UCL because the late fees, the provision of the water delivery subscription agreement imposing the late fees, and Defendants' enforcement of them through the imposition and collection thereof cause substantial harm that is not outweighed by countervailing benefits to consumers or competition, and consumers could not reasonably have avoided the harm.

45.     The late fee was neither a fair nor reasonable measure or approximation of any damage Defendants sustained as a direct result of the late payment.  The late fee assessed against Plaintiffs was always a fixed amount and not, in any way, proportional to the original underlying invoice.  Also, the due date for payment of the invoice was always 20 days, not 30 days from the invoice date.  Defendants' acts of imposing these excessive late fees and assessing them before 30 days is unfair.

46.     Considering these facts, Plaintiffs allege that the late fee was not, in any way, proportional to the original underlying invoice and excessive, and was therefore unfair. The fixed amount Defendants assess as a late fee unfairly and unproportionally punishes consumers who place smaller orders of water bottles. The underlying balance is not adequately and properly considered by Defendants when assessing a late fee.  The confusing nature of the terms led Plaintiffs to believe that they would be charged a late fee that would be both proportional with their underlying balance and reasonable given the circumstances.  Further, Plaintiffs believed that they would only be assessed a late fee after being more than 30 days late in remitting the payment.

47.     Further, the impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendants.  The impact on Plaintiffs and the Class Members has been described.  Defendants can have no possible justification for

-15-

engaging in immoral, unethical and substantially injurious act of overcharging Plaintiffs and the Class Members through a misleading and deceptive late fee penalty. Furthermore, Plaintiffs and the Class Members could not have reasonably avoided this injury because they relied on the fact that any late fees they would be required to pay would only be assessed if they did not pay within 30 days and would not unreasonable or unfair. Plaintiffs would not have entered into such contracts but for the deceptive marketing by Defendants. Furthermore, these contracts were contracts of adhesion, in that Plaintiffs would not be able to purchase water delivery from the Defendants unless they agreed to the terms and conditions, including the late fee charges.

48.    In early 2018 (and possibly as early as January 2017), that charge was described as "the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the invoice date until paid." However, the terms also stated that "[i]f the late fee exceeds the maximum rate allowed by applicable law, the late charge will be equal to such maximum rate." Article XV, Section 1 of the *Constitution of the State of California* ("the Usury Law") provides a maximum range of interest rates that may be charged (7 – 10% per annum) on loans. California *Civil Code* section 1916 sets the interest on a loan or forbearance of money, goods or things at 12% per annum.

49.    In most cases, with respect to Plaintiffs DONELL COREY KENDALL and MARLON JAVIER, the late fee of $20 assessed for each invoice was in excess of 70% of the underlying beverage charge.

50.    Furthermore, the terms and conditions of NESTLE's beverage delivery services imply that the fee may be based on "any" charge – including, but not limited to, the beverages themselves, the bottle fees, the delivery fees and taxes. It is unclear how the determination is made.

51.    Additionally, although the terms state that the customer has 30 days from the invoice date to pay, NESTLE's "pay by" date is only 20 days from the billing date. As an example of this unfair practice, MARLON JAVIER received an invoice with a billing date of June 16, 2021 in the amount of $39.28 for the products he received, however, the pay by date on the invoice was only 20 days later, on July 6, 2021. (See Exhibit "3".) Furthermore, the $20 late fee was charged on July 14, 2021, only 8 days after the balance was not paid on the due date and only 28 days after the original billing date. Not only were the fees being assessed early but also, when they were assessed, there was no reference as to the actual bill. This is misleading and confusing. These acts and practices offend an established public policy of transparency in pricing, and are immoral, unethical, oppressive and unscrupulous, which are substantially injurious to consumers. In California, for example,

pursuant to the state's Public Utilities and Energy law, the state requires forty-five days before notice of additional charges may be given for a thirty-day billing cycle, and seventy-five days before notice of additional charges may be given for a sixty-day billing cycle. *Cal. Pub. Util. Code* § 3.2(d) (West 2006). See, e.g., *In re Peoples Energy Serv. Corp.*, 235 P.U.R.4th 385, 385, 388 (Il. Commerce Comm'n 2004) (citing ILL. ADMIN. CODE tit. 83 § 280.90(c)), available at 2004 WL 2378100 (ordering an alternative gas retail suppler to "cease and desist from misleading marketing practices," imposing a fine of $40,000 on the gas supplier, and directing the supplier to send a letter to its current customers clarifying its terms and conditions and advising consumers that the supplier's "payment requirements are quite different from those of a regulated utility. The supplier requires payment within ten days of the invoice date, instead of 21 days after the date of the postmark on the bill, which is what is required of a delivering utility."). The Citizens Utility Board had argued that "providing customers with such a little amount of time to pay their bills increases the likelihood that customers will incur late charges." *Id.* at 388.  Additionally,  the Ninth Circuit Court of Appeals recently held that a late-payment penalty of $63 was excessive and a Los Angeles City Parking Ordinance was violating the Eight Amendment's Excessive Fines Clause, where under the ordinance, if a person parked his/her car past the allotted time limit, he/she would be fined $63, and if he/she failed to pay that fee within 21 days, the City would impose an additional late-payment penalty of $63. *Pimentel v. City of L.A.*, 966 F.3d 934, 941 (9th Cir. 2020).

52.    The utility of the late fees imposed here by Defendants is significantly outweighed by the gravity of the harm that it imposes on consumers. The gravity of the harm that the late fee imposed on consumers is substantial in that it exceeded the actual amount of harm (if any) incurred by Defendants, especially given that it was charged merely 8 days after the balance was not paid on the due date. Through their imposition and collection of the Late Fees from the members of the Class, Defendants have been massively and unjustly enriched.

53.    Plaintiffs further contend that the penalty fees charged were unfair because these fees were fundamentally punitive in nature and an unfair surcharge given the amount of the original bills at issue.  Additionally, these fees appeared to be a penalty for those who struggled to pay on time as they are not measured to account for Defendants' associated costs but rather to punish consumers who financially struggled to pay their bills on time.

54.    The harm to Plaintiffs DONELL COREY KENDALL, MARLON JAVIER and Class members  outweighs  the  utility  of  Defendants'  practices.    There  were  reasonably  available

alternatives to further Defendants' legitimate business interests other than the misleading, deceptive and unfair conduct described herein.

***"Fraudulent" Prong***

55.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

56.    Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiffs, and are highly likely to deceive and have deceived members of the consuming public.  When Plaintiff DONELL COREY KENDALL realized he was being charged a disproportionate late fee, he contacted NESTLE's customer service line.  He made calls multiple times over a period of several years.[10]  On each occasion, Plaintiff KENDALL questioned why the late fee was nearly as much as the monthly water charges.  And on each of those occasions, NESTLE's customer service representative was unable to answer his question, apologized for the charge, and reversed the fee.  This led Plaintiff KENDALL to believe that the flat fees were erroneous, for if the fee were legitimate, NESTLE would not reverse the charge each time he called.

57.    Plaintiff KENDALL further relied on Defendants' fraudulent and deceptive representations regarding their late fees. This was confirmed when he saw the online offer from Ready Refresh in early 2018, which specified that if "the late fee or interest rate exceeds the maximum rate allowed by law, the late charge would be "…the greater of (i) a late fee not to exceed $20 per month, or (ii) interest of 1.5% per month on any unpaid amount from the "pay by" date until paid. If the late fee or interest rate exceeds the maximum rate allowed by law, the late charge will be equal to such maximum rate will be equal to such maximum rate."

58.    Defendants always charged Plaintiffs a $20 (originally $15) fee that was unconscionable, excessive, unreasonable and unfair.  The late fee was neither a fair nor reasonable measure or approximation of any damage Defendants sustained as a direct result of the late payment. The late fee assessed against Plaintiffs was always a fixed amount and not, in any way, proportional to the original underlying invoice.  Also, the due date for payment of the invoice was always 20 days, not 30 days from the invoice date.  Defendants' acts of imposing these excessive late fees and

---

[10] Plaintiff KENDALL does not have the exact dates on which he called NESTLE's customer service number; however, he has invoices showing that late fees were reversed on 7/29/15, 8/29/16 and 6/27/17 (approximately 8 late fees were reversed on these dates).  He is missing several invoices for the four-year period, which might document additional reversed fees.

assessing them before 30 days are unconscionable, void and unenforceable under California law.

59.    Considering these facts, Plaintiffs allege that the late fee was not, in any way, proportional to the original underlying invoice and excessive, unconscionable, void and unenforceable under California law.  The fixed amount Defendants assess as a late fee unfairly and unproportionally punishes consumers who place smaller orders of water bottles.  The underlying balance is not adequately and properly considered by Defendants when assessing a late fee.  The deceptive nature of the terms led Plaintiffs to believe that they would be charged a late fee that would be both proportional with their underlying balance and reasonable given the circumstances.  Further, Plaintiffs believed that they would only be assessed a late fee after being more than 30 days late in remitting the payment.

60.    Plaintiffs KENDALL, JAVIER and other class members agreed to these contracts based on Defendant's deceptive sales practices and the verbal information given to them by the sales representatives.  These misrepresentations played a substantial role in Plaintiffs' decision to enter into an agreement with Defendants for beverage delivery, and Plaintiffs would not have purchased their products without these misrepresentations.

61.    Plaintiffs further contend that the penalty fees charged were fraudulent because these fees were substantial in that they exceeded the actual amount of harm (if any) incurred by Defendants, especially given that it was charged merely 8 days after the balance was not paid on the due date. Through their imposition and collection of the Late Fees from the members of the Class, Defendants have been massively and unjustly enriched. The flat fee of $20 charged by Defendants was often in excess of seventy percent (70%) per month of the actual cost of the beverage service. The late penalty fees charged did not take into consideration the actual costs Defendants incurred when a customer made a late payment as the cost of recovery of late payments from its customers is nowhere near the cost of delivering, administrating and providing Defendants' beverage service.  Defendants charged a late fee that was in no shape or form proportional to the invoice amount that was deemed late, nor to its actual costs incurred, as such unfairly and unreasonably penalizing consumers who placed smaller order when compared to businesses.

***"Unlawful" Prong***

62.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

63.    As detailed in Plaintiffs' Second Cause of Action below, the Consumer Legal Remedies Act, California *Civil Code* sections 1750 - 1784, prohibits a business from engaging in sales practices that are deceptive or misrepresentations when offering goods and services to the general public.

64.    Defendants charged Plaintiffs the $20 fee even though that fee was unconscionable, excessive, unreasonable and unfair. The late fee was neither a fair nor reasonable measure or approximation of any damage Defendants sustained as a direct result of the late payment.  The late fee assessed against Plaintiffs was always a fixed amount and not, in any way, proportional to the original underlying invoice. Also, the due date for payment of the invoice was always 20 days, not 30 days from the invoice date.  Defendants' acts of imposing these excessive late fees and assessing them before 30 days are unconscionable, void and unenforceable under California law.

65.    The late fee was not, in any way, proportional to the original underlying invoice and excessive, unconscionable, void and unenforceable under California law.  The fixed amount Defendants assess as a late fee unfairly and unproportionally punishes consumers who place smaller orders of water bottles.  The underlying balance is not adequately and properly considered by Defendants when assessing a late fee.  The confusing nature of the terms led Plaintiffs to believe that they would be charged a late fee that would be both proportional with their underlying balance and reasonable given the circumstances.  Further, Plaintiffs believed that they would only be assessed a late fee after being more than 30 days late in remitting the payment.

66.    Defendants' retention of funds from Plaintiffs and others as a result of their wrongful activities amounts to conversion under *Civil Code* section 3336.

67.    Furthermore, California Uniform Commercial Code section 2718 requires damages for breach by a party that is liquidated in the agreement to be "reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy." Here, Defendants' late fee penalties were unreasonable and as such unlawful.

68.    Plaintiffs allege that the late fees Defendants assess generate substantial revenues and profits for Defendants.  If and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees (e.g., being late to make a payment), it is neither impracticable nor extremely difficult to fix the actual damage. Furthermore, if and to the extent that Defendants suffer, would suffer, or have suffered any damage upon the condition that triggers the late fees, the late fees are not a reasonable measure or approximation of such damages and do not provide fair average compensation therefor. Moreover,

they are unreasonable, excessive and punitive in nature. On information and belief, Defendants did not conduct a reasonable endeavor to fix fair average compensation for losses, if any, that they incur, would incur or have incurred by virtue of any of the conditions that trigger the imposition of the late fees.

69.    Further, if and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees (e.g., being late to make a payment), it should always be proportional to the unpaid balance. On information and belief, Defendants did not conduct a reasonable endeavor to determine how the loss, if any, is reflected in proportion to a given underlying balance. If and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees, it is neither impracticable nor extremely difficult to fix the actual damage and compute it as a proportion of the remaining unpaid balance.

70.    Plaintiffs allege that the practice of Defendants is an unfair business practice under section 17200 of the *Business and Professions Code*, entitling them and others to restitution, and further that such practice should be enjoined.

71.    Such illegal conduct also constitutes an unfair business practice under section 17200.

72.    Plaintiffs allege, on information and belief, that Defendants' unfair practices should be temporarily and permanently enjoined.

73.    Plaintiffs further allege that the actions conducted by the Defendants are, and continue to be, a deliberate and intentional attempt by Defendants to "fleece the consumer" in violation of law, and is of such a fraudulent and malicious nature as described in section 3294 of the California *Civil Code* so as to entitle the Plaintiffs to punitive damages.

74.    Besides being unlawful, Defendants' conduct alleged herein is "unfair" within the meaning of section 17200 inasmuch as such conduct offends public policy in this State, has no utility or rational justification and is substantially injurious to the general public.

75.    Besides being unlawful and unfair, Defendants' conduct alleged herein is also "fraudulent" and/or "misleading" within the meaning of *Business & Professions Code* section 17200 inasmuch as such conduct is likely to deceive members of the general public.

76.    Defendants' excessive and unconscionable late fee penalty is excessive, unconscionable and unlawful under California law.

77.    On information and belief, Defendants have received unearned commercial benefits, at the expense of their competitors and the general public, as a result of their employment of unlawful,

-21-

and/or unfair and/or fraudulent and/or misleading business practices, including charging excessive late fees without advance notice to their customers.

78.    Defendants' unlawful business practices are ongoing, and unless enjoined under *Business & Professions Code* section 17203, and/or under section 17535, are likely to continue to deceive other members of the general public at the expense of Defendants' competitors. The amounts charged by Defendants for late fees are unlawful in that the amount is an improper attempt to state liquidated damages such that the amount operates as a penalty in violation of California law.

79.    In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs also seek, in addition to damages, restitution and other equitable relief, to recover attorney fees under (i) section 1021.5 of the *Code of Civil Procedure*, and/or (ii) the "common fund" doctrine available to prevailing Plaintiffs who confer a benefit on the general public.

## SECOND CAUSE OF ACTION

### (For Violation of *Civil Code* section 1750, *et seq.*)

80.    Plaintiffs reallege and incorporate here by reference each of the foregoing paragraphs, and further allege as follows.

81.    Defendants are "persons" as defined by *Civil Code* section 1761(c).

82.    Plaintiff and each member of the Class are "consumers" within the meaning of *Civil Code* section 1761(d).

83.    The Consumers Legal Remedies Act applies to Defendants' conduct because it extends to transactions that are intended to or result in the sale or lease of goods or services to consumers. Defendants sold goods to the Plaintiffs (bottled beverages), and the delivery of that water and other beverages constitutes "services" under the CLRA.

84.    Defendants violated and continue to violate the CLRA by engaging in the following practices prescribed by *Civil Code* section 1770(a) in transactions with the members of the Class which were intended to result in, and did result in, payment of excess amounts for late fees for late subscription payments.

85.    In violation of *Civil Code* section 1770(a)(19), Defendants inserted an unconscionable provision in the contract, assessing excess penalty fees for late payments and charging late fees before payments were actually due.

86.    Defendants charged Plaintiffs the $20 fee even though that fee was unconscionable, excessive, unreasonable and unfair. The late fee was neither a fair nor reasonable measure or approximation of any damage Defendants sustained as a direct result of the late payment. The late

fee assessed against Plaintiffs was always a fixed amount and not, in any way, proportional to the original underlying invoice. Also, the due date for payment of the invoice was always 20 days, not 30 days from the invoice date. Defendants' acts of imposing these excessive late fees and assessing them before 30 days are unconscionable, void and unenforceable under California law.

87.    The late fee was not, in any way, proportional to the original underlying invoice and excessive, unconscionable, void and unenforceable under California law. The fixed amount Defendants assess as a late fee unfairly and unproportionally punishes consumers who place smaller orders of water bottles. The underlying balance is not adequately and properly considered by Defendants when assessing a late fee. The confusing nature of the terms led Plaintiffs to believe that they would be charged a late fee that would be both proportional with their underlying balance and reasonable given the circumstances. Further, Plaintiffs believed that they would only be assessed a late fee after being more than 30 days late in remitting the payment.

88.    Defendants have failed to disclose material facts to the Class members by continuing to charge them untimely and excessive late fees, and by failing to disclose their illegal conduct in not crediting the late fees they illegally collected from their customers. Defendants had a duty to disclose the omitted facts because: 1) they had exclusive knowledge of material facts not known to Class members and which could not be discerned from review of Defendants' contracts and agreements; 2) because they actively concealed material facts; and 3) because they made partial representations, including those discussed above, while suppressing true material facts. The facts that Defendants misrepresented and concealed as alleged in the preceding paragraphs were material to the decisions Plaintiffs made in entering contracts with the Defendants, and their failure to complain about the excessive late fees they were charged by Defendants. Defendants are liable under the CLRA for these material omissions.

89.    Defendants have engaged in deceptive practices, unlawful methods of competition and/or unfair acts as defined by Civil Code § 1750, et seq., to the detriment of Plaintiffs and the members of the Class. Plaintiffs and the members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendants alleged herein. Defendant intentionally, knowingly, and unlawfully perpetrated harm upon Plaintiffs and the Class members by inserting unconscionable, unenforceable and illegal provisions in their water delivery subscription agreements with Plaintiffs and the Class members in violation of Civil Code § 1770(a), and by enforcing those provisions.

90.    By inserting an unconscionable, unenforceable and void late fees provisions in the

water delivery subscription agreement, and then enforcing those provisions by imposing and collecting late fees, Defendants also violated *Civil Code* § 1770(a)(14), which prohibits them from representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

91.    Defendants' policy and practice with respect to their inclusion of late fees in their water subscription agreement and their practices relating to the collection of late fees is unlawful, unethical, oppressive, fraudulent and malicious. The gravity of the harm to all affected consumers from Defendants' policies and practices far outweighs any purported utility those policies and practices have.

92.    Plaintiffs and the members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendants alleged herein and will continue to suffer such harm if Defendants illegal practices are not abated.

93.    Pursuant to *Civil Code* section 1782(d), the Class seeks a court order enjoining the above-described wrongful acts and practices of Defendants.

94.    Pursuant to *Civil Code* section 1782, Plaintiffs notified Defendants in writing by certified mail of the particular violations of Civil Code section 1770 and the other violations as alleged herein and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

### THIRD CAUSE OF ACTION

**(For Imposition of Unlawful Penalties in Violation of California
*Civil Code* section 1671 Against All Defendants)**

95.    Plaintiffs incorporate all paragraphs above as though fully set forth herein.

96.    Defendants' late fee policy and practices, as set forth herein, violate *Civil Code* section 1671 in that they are unreasonable under the circumstances existing at the time the contracts were made.

97.    The late fees are impermissible liquidated damages provisions under California law. The late fees themselves, the contractual provisions that provide for them and their imposition and collection by Defendants violate *Civil Code* section 1671 and are unlawful, void and unenforceable under that statute.

98.    *Civil Code* section 1671(d) states that a contractual provision, in a contract for the retail purchase or rental of personal property or services primarily for the party's personal, family, or household purposes, liquidating damages for the breach of the contract, is void except that the parties

to such a contract may agree therein on an amount that shall be presumed to be the amount of the damage sustained by a breach thereof, when, from the nature of the cause, it would be impracticable or extremely difficult to fix that actual damage. The water delivery subscription agreement is a contract for the purchase of the most basic goods, water bottles, primarily for personal, family or household use of Plaintiffs and the members of the Class.

If and to the extent that Defendants suffer, would suffer or have suffered any damages due to late payment by Plaintiffs KENDALL, JAVIER or members of the Class, it would not be impracticable, nor would it be extremely difficult, to determine them with certainty. Furthermore, the liquidated damages in the water delivery subscription agreement do not reflect a reasonable endeavor by Defendants to assess a fair, proportional and reasonable compensation for any harm that Defendants would suffer, may suffer or have suffered, if any, upon the occurrence of the condition that triggers the late fees.  The cost Defendants incur as a result of a late payment is significantly less than the $20 late fee charged. Furthermore, Defendants assessed a $20 late fee no matter how large the late fee was relative to the overdue payment, or how many days overdue the payment might have been.  In fact, it is clear that the penalty fee charged was used for generating profits and not for offsetting damages.

99.    [F]or liquidated damages to be valid under subdivision (d) of Civil Code section 1671, it must have been "impracticable or extremely difficult to fix the actual damage." *Hitz v. First Interstate Bank,* 38 Cal.App.4th 274, 288 (1995).  Additionally, the amount of liquidated damages "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." *Id.*  In that case, the court noted that there was evidence at trial that the bank's late fee was intended "to generate new revenue" and "increase profitability." *Id.* at 289.  Similarly, here, it is clear that the $20 late fee charged by Defendants was not intended to recoup damages suffered by late payments because Defendants did not actually incur costs in the amount of $20, as the only additional step they took once a customer was late in making a payment was to add an extra line on the customer's next bill indicating that a $20 penalty fee was added to the outstanding balance.  As such, the amount assessed cannot be argued to be proportional to the loss incurred by the Defendants, especially given the insignificant amount of the original invoices.

100.    The flat fee of $20 charged by Defendants was often in excess of seventy percent (70%) per month of the actual cost of the beverage service.  The late penalty fees charged did not take into consideration the actual costs Defendants incurred when a customer made a late payment

as the cost of recovery of late payments from its customers is nowhere near the cost of delivering, administrating and providing Defendants' beverage service.  Defendants charged a late fee that was in no shape or form proportional to the invoice amount that was deemed late, nor to its actual costs incurred, as such unfairly and unreasonably penalizing consumers who placed smaller order when compared to businesses. Further, the assessment of the late fee after only 20 days, and not after 30 days as specified in the written terms and conditions, is also unlawful, unfair and punitive in nature.

101.    Further, if and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees (e.g., being late to make a payment), it should always be proportional to the unpaid balance.  On information and belief, Defendants did not conduct a reasonable endeavor to determine how the loss, if any, is reflected in proportion to a given underlying balance. If and to the extent that Defendants suffer, would suffer or have suffered any type of damage upon the occurrence of the condition that triggers the late fees, it is neither impracticable nor extremely difficult to fix the actual damage and compute it as a proportion of the remaining unpaid balance.

102.   These contracts were contracts of adhesion drafted by Defendants and/or its parents, subsidiaries or affiliates and presented to prospective customers on a "take it or leave it" basis with no opportunity for any prospective customer to negotiate any of its terms and conditions.  The late fees provisions in the agreement are liquidated damages provisions that fail to comply with the standards set forth in *Civil Code* § 1671(d), and therefore constitute impermissible contractual penalties. Defendants' imposition of late fees on Plaintiffs and the members of the Class violates, and at all times relevant here to has violated, § 1671(d). Defendants' collection of late fees from Plaintiffs and the members of the Class likewise violates, and at all times relevant hereto has violated, Civil Code§ 1671(d).

103.   As such, Defendants' late fee policy and practice cause customers to incur excessive penalties that bear no relation to the damages Defendants actually incur as a result of the untimely payments as it cannot possibly cost $20 to "deal with the delinquency," of Defendants sending the customer a late payment notice.  When a payment was not made on time by Plaintiffs or members of the Class, the only action taken by Defendants in response was to add an extra line on the next bill indicating that a $20 penalty fee was added to the outstanding balance.  Defendants cannot contend that as a result of a late payment, they incurred $20 in costs and expenses when no action was taken by them other than adding a penalty fee to the next billing cycle.  Additionally, and even if there were some costs and expenses associated with a late payment, which Plaintiffs contend could not

have been $20, Defendants continued to charge additional late penalty fees of $20 on every subsequent bill following the first penalty fee, at times resulting in the outstanding penalty fees equaling $80 or more, an amount that was more than double the amount owed for the actual product. On information and belief, Defendants did not conduct a reasonable endeavor to fix fair average compensation for losses, if any, that they incur, would incur or have incurred by virtue of any of the conditions that trigger the imposition of the late fees.

104.  As a direct result of Defendants' late fee policy and practice, Plaintiffs were forced to incur excessive and unreasonable penalties.  Plaintiffs suffered injury in fact in the form of lost money and/or property as a result of paying the excessive and unreasonable late fees billed and automatically charged by Defendants.

105.  The late fee provision is a liquidated damages provision that fails to comply with the standards set forth in *Civil Code* section 1671(d), and therefore constitutes impermissible contractual penalties. Defendants' imposition of late fees on Plaintiffs KENDALL, JAVIER and the members of the Class violates, and at all times relevant hereto, has violated section 1671(d). Defendants' collection of late fees from Plaintiffs KENDALL, JAVIER and the members of the Class likewise violates, and at all times relevant hereto, has violated Civil Code section 1671(d).

## **PRAYER FOR RELIEF**

1.    Plaintiffs, DONELL COREY KENDALL and MARLON JAVIER, individually and on behalf of all others similarly situated, pray for relief and judgment against Defendants as follows:

(a)    An order certifying the Class and designating DONELL COREY KENDALL and MARLON JAVIER as Class Representative and their counsel as Class Counsel;

(b)    Awarding Plaintiffs and the proposed Class members damages according to proof;

(c)    Awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of their unlawful, unfair and fraudulent business practices described herein;

(d)    Awarding declaratory and injunctive relief as permitting by law or equity to Plaintiff MARLON JAVIER, and all those similarly situated, including enjoining Defendants from continuing the unlawful practices set forth herein, and directing Defendants to identify, with Court supervision, victims of their misconduct and pay them all money they

1    are required to pay;

2         (e)    Awarding attorneys' fees and costs; and

3         (f)    Providing such further relief as may be just and proper.

4

5

6    DATED: January 21, 2022                **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

7                                           */s/ Azar Mouzari*
8                                           Azar Mouzari, Esq.
                                            Nilofar Nouri, Esq.
9                                           Attorney for Plaintiffs

10

11

12

13                         **<u>DEMAND FOR JURY TRIAL</u>**

14    Plaintiffs demand trial by jury of all issues raised in this Complaint.

15

16    DATED: January 21, 2022                **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**

17                                           */s/ Azar Mouzari*
18                                           Azar Mouzari, Esq.
                                            Nilofar Nouri, Esq.
19                                           Attorney for Plaintiffs

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the United States District Court Central District of California by using the CM/ECF system on January 21, 2022.

I further certify that all participants in the case appear to have been registered CM/ECF users and that service should therefore be accomplished by the CM/ECF system via electronically mail to all counsel of record.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 21, 2022, in Los Angeles, California.

*/s/ Nilofar Nouri*
Nilofar Nouri

*PLAINTIFFS' THIRD AMENDED COMPLAINT*
*[CLASS ACTION]*